**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lee NATIONS, Defendant-Appellant.**

No. 84–1689.

United States Court of Appeals,
Fifth Circuit.

June 25, 1985.

William D. Kane, Fort Worth, Tex. (Court-appointed), for defendant-appellant.

James A. Rolfe, U.S. Atty., James T. Jacks, Dallas, Tex., for plaintiff-appellee.

Before TATE and HIGGINBOTHAM, Circuit Judges, and CASSIBRY,* District Judge.

TATE, Circuit Judge:

The defendant Lee Nations appeals from the judgment entered upon a jury's verdict of guilty as to each of three counts charging interstate transportation of a stolen motor vehicle, 18 U.S.C. § 2312, and aiding and abetting such transportation, 18 U.S.C. § 2. Nations contends: (1) that he is entitled to reversal and dismissal of the prosecution because the evidence at trial showed "outrageous government conduct" in the investigation of Nations and because an informant was paid on a contingency basis (for "positive results only"); (2) that he is entitled to reversal and entry of judgment of acquittal because the evidence at trial established entrapment as a matter of law; and (3) that he is entitled to reversal and a new trial because the district court erred in denying his request to instruct the jury on the defense of entrapment. We conclude that, although the evidence did not establish either outrageous government conduct or entrapment as a matter of law, the district court erroneously denied Nations' request for an entrapment instruction. Accordingly, we reverse.

I.

Jerry Street, the defendant Nations' former brother-in-law, was an undercover informant for the Federal Bureau of Investigation ("FBI") in the investigation of Nations. The FBI paid Street on a contingency basis, for "positive results only," according to a testifying FBI agent. Street received about $1,500 for his contribution to the Nations investigation. Street testified at trial that he had a substantial criminal history, had been imprisoned, and previously had served as an informant for the FBI.

* District Judge of the Eastern District of Louisiana, sitting by designation.

Nations testified that Street approached him two or three times in October 1982 with a legitimate business proposition. According to Nations, Street requested Nations' assistance in locating damaged automobiles to be purchased, repaired, and resold. Street, Nations testified, said that he would be able to get a job with a particular garage if he could arrange this and that the job was important because he had cancer,[1] a new wife, debts, and no job. Nations further testified that Street knew Nations had a sister who recently had died of cancer and that Nations therefore was particularly moved by the spectre of Street's cancer. (Nations and his wife also testified that, after meeting with Street, Nations contacted a physician in the hope of getting suitable treatment for Street.)

Street admitted that he met with Nations in October but denied that there were as many as three meetings. He also denied that he mentioned cancer or the possibility of a job in a garage (although he admitted mentioning cancer later in the investigation). According to Street, he asked Nations about obtaining stolen cars: "I asked him if he knew anybody that was dealing in hot cars, and he said, why, certainly."

Whatever the nature of the October discussion between Street and Nations, it was undisputed at trial that Street approached the FBI in mid-November. He told FBI agents that Nations was involved in selling stolen automobiles. Street testified at trial that he had two principal reasons for contacting the FBI about his former brother-in-law: (1) a vendetta arising from Street's belief that Nations had stolen some of his jewelry when he was in prison; and (2) resentment over Nations' sale of controlled substances, for which he (Street) had been imprisoned, while Nations was not caught. After the contact by Street, the FBI undertook an investigation.

Street arranged a meeting with Nations. An FBI agent (undercover) and Street met with Nations in Nations' home on the day after Thanksgiving. In an unrecorded conversation, Street introduced the agent as a person wanting to purchase late model luxury automobiles. The agent indicated that he wanted these cars at an inexpensive price.

As a result of the conversation in Nations' home, Nations drove the FBI agent and Street to meet with James Kirk, a person Nations represented to have the ability to acquire late model luxury automobiles. All of these parties, as well as a Kirk employee, met in Nations' automobile, and their conversation was recorded. Nations participated "very little" in the discussion, according to the testimony of the FBI agent involved. Kirk indicated that he would have a 1981 model Cadillac to sell in the near future. The parties briefly discussed stolen rifles, a discussion in which Nations participated. The parties also mentioned possible remuneration to Nations for his efforts in putting the FBI agent in touch with Kirk, but Nations did not raise this issue or press it.[2] During the conversation, the parties did not expressly mention stolen automobiles, but the FBI agent involved in the discussions testified that such was the clear meaning of the discussion of late model luxury automobiles at an inexpensive price.

The following day, Nations telephoned the FBI agent. The agent returned the call and recorded the conversation. Nations told the agent to telephone Kirk concerning an automobile. When the agent did so, Kirk and the agent made arrangements (in a recorded conversation) for delivery of an automobile. Although the automobile was not delivered as planned, ultimately a stolen automobile was delivered after several more recorded conversa-

---

**1.** On the trial record, it appears that both Street and the FBI agents believed (incorrectly) that Street had cancer.

**2.** The tape recording of this meeting is so poor that the conversation cannot be clearly dis-

cerned. The trial testimony about what was said about payment to Nations is unclear. The FBI agent involved in the conversation testified that nothing was said about "there being money paid to Lee Nations."

tions between the FBI agent and Nations and Kirk.

A second FBI agent thereafter became involved in the investigation. There were more recorded telephone conversations, and Kirk delivered two additional automobiles. In all of these conversations, Nations conveyed messages back and forth between Kirk and the FBI agent and participated in making arrangements for the delivery of Cadillac automobiles. Each of the three delivered Cadillac automobiles gave rise to one count of the three-count indictment charging interstate transportation of stolen automobiles.

In all, the investigation lasted about four months. During that time, the FBI agents paid Nations $100. Nations himself never requested any money.[3] After the sale of the first stolen Cadillac automobile, the agents raised the money question in an unrecorded restaurant conversation. One of the agents present testified about no details of this conversation. The other agent present testified that, upon being asked if he had received any money from Kirk, Nations said he had not but hoped to "work something out" with the undercover agent. According to the agent, Nations accepted $100 and agreed to a fifteen percent commission on future automobile sales and a ten percent commission on proposed heavy equipment sales.

Nations testified that he was a stable fifty-year-old businessman (buying, repairing, and reselling homes and automobiles) and that he never had been involved in criminal activity (contradicting Street's testimony). Several character witnesses corroborated this testimony.

Nations further testified that he became involved with Street because of pity at Street's financial condition and illness (can-

cer). Nations denied, however, that he ever intended to participate in the sale of stolen automobiles. According to Nations, he initially thought all arrangements were legal (Street's new job) but became suspicious during the first recorded meeting with Kirk and the FBI agent. After consulting with a prominent friend (who corroborated Nations' testimony), Nations, according to his testimony, sought to investigate Kirk and the undercover FBI agent to develop evidence that he could provide to the appropriate authorities.

By its verdict, the jury rejected Nations' testimony concerning his lack of criminal intent.[4] Before closing arguments, however, Nations requested the trial court to instruct the jury on the defense of entrapment. Nations submitted a pattern instruction to this effect and argued that there was sufficient evidence to raise the issue. Apparently because Nations denied criminal intent to join the effort to transport stolen automobiles, the district court denied an entrapment instruction. Thus, Nations' counsel did not argue the entrapment defense, and the jury was not instructed to consider it.

## II.

Nations urges that he is entitled to reversal and dismissal of prosecution because (1) the government's investigatory conduct, particularly that attributable to Street, was outrageous and (2) Street was paid "for positive results only" in the Nations investigation.

So-called "outrageous government conduct" during a criminal investigation may bar prosecution and require dismissal of an indictment. *United States v. Yater*, 756 F.2d 1058, 1064–66 (5th Cir.

---

**3.** One of the FBI agents testified that this was not significant because "most of the people involved in this investigating that we pay, most of them do not really come out and say, I want my money." The other agent, however, testified that Nations' failure to press the issue of compensation was unusual:

Q: [Y]ou have never known [a criminal] that does it for free, have you? In all your

experience as an FBI agent, have you ever known one to do it for free?

A: Just Mr. Nations.

**4.** *Cf., United States v. Kelly*, 748 F.2d 691, 700–01 (D.C.Cir.1984) (terming similar investigation defense "bizarre and preposterous," in instance where, however, entrapment defense was submitted to the jury).

1985). According to Nations, that conduct in this case consisted principally of Street's exploitation of cancer to persuade Nations to assist in the sale of stolen automobiles. Neither this nor any other circumstance of the investigation in this case, however, was improper—and certainly not the "rarest and most outrageous circumstances" necessary to require dismissal of an indictment. *United States v. Yater*, 756 F.2d 1058, 1065–66 (5th Cir.1985). Moreover, the outrageous government conduct defense generally is available only upon proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity. *Id.* "[A] defendant cannot avail himself of the defense where he has been an *active participant* in the criminal activity which gave rise to his arrest." *Id.* at 1066 (emphasis in original). In the present case, the government was not overinvolved, and Nations actively participated in the effort to sell stolen automobiles.

■ In limited circumstances, the use of contingent fee informers also may require dismissal of an indictment. *United States v. Yater*, 756 F.2d 1058, 1067 (5th Cir.1985). At trial, an FBI agent testified that in the Nations investigation, as in other investigations in which Street participated, Street was to be paid "for positive results only," arguably making him a contingent fee informer. We have held this to be improper only if the "government pre-targeted specific defendants" for the attention of the contingent fee informer. *Id.* In this case, the uncontested, overwhelming evidence established that Street went to the FBI with information about Nations and that the FBI did not "pre-target" Nations for Street's attention.[5] No basis for dismissal exists.

### III.

Nations also urges that he is entitled to a judgment of acquittal because the evidence at trial established "entrapment as a matter of law." Assuming that the evidence raised the entrapment defense, and we conclude that it does in Part IV of this opinion, the defense in this case, as in most cases, was not resolvable by the court as a matter of law. *See United States v. Henry*, 749 F.2d 203, 213 (5th Cir.1984) (en banc) (indicating entrapment ordinarily a jury issue); *United States v. Cochran*, 697 F.2d 600, 608 n. 3 (5th Cir.1983) (same).

■ Where the entrapment defense is available and invoked by the defense, the jury may convict only upon finding that the government has proved beyond a reasonable doubt that the defendant was predisposed to commit the charged crime. *United States v. Henry*, 749 F.2d 203, 207 n. 5 (5th Cir.1984) (en banc). In essence, the jury must find that the defendant's culpable intent originated with the defendant and was not the result of acts of government agents. *Id.* at 213. Thus, to declare entrapment as a matter of law requires the conclusion that a reasonable jury could not find that the government discharged its burden of proof. *See United States v. Frascone*, 747 F.2d 953, 956–57 (5th Cir. 1984); *United States v. Garrett*, 716 F.2d 257, 274 (5th Cir.1983); *United States v. Cochran*, 697 F.2d 600, 608 n. 3 (5th Cir. 1983).

■ A reasonable jury could have found beyond a reasonable doubt that Nations was predisposed to serve as a go-between in the sale of stolen automobiles. There was not overwhelming evidence of serious resistance by Nations—only the possible existence of the two or three October meetings initiated by Street and his possible discussion with a prominent friend of the advisability of going forward with Kirk and the undercover FBI agent. *See* note 6 *infra*. Moreover, the jury could have found that Nations' tape-recorded conversations showed him an eager, active participant in stolen car sales. The evidence did

---

5. For example, upon defense cross-examination of the FBI case agent, defense counsel queried: "And it is correct, isn't it, ... that it was the informant Jerry Street who approached you about Lee Nations." The agent responded: "Yes."

not establish entrapment as a matter of law.

## IV.

Before final argument to the jury, Nations timely requested the district court to give the jury a pattern entrapment instruction, a copy of which he provided to the district court. In the following colloquy, the district court denied the instruction because Nations denied criminal intent (by advancing a defense that he played along with the illegal scheme for investigative purposes), notwithstanding the argument of Nations' lawyer that the jury could disbelieve Nations and yet have a reasonable doubt as to entrapment:

DEFENSE LAWYER:

Our other objection is to the failure of the Court to charge the jury on entrapment as requested in our requested instructions filed today. We feel like that this peculiar fact situation where the defendant has confessed and admitted that he did the act which formed the basis for the indictment gives rise to the necessity to charge the jury on entrapment. He virtually confessed to doing—to having all of the telephone conversations Mr. Jacks played for the jury. He confessed all of the—to a certain point he confessed knowing that the vehicles had been stolen, so we believe, in view of his statement he has admitted the act which constitutes the offense, and therefore, we are entitled to have the jury charged on the defensive theory of entrapment, as requested in our instructions.

THE COURT:

Well, I am going to deny the request for the reason that the defendant has stated—while he has admitted what is on the tape, it has been his contention that he was suspicious from the very beginning and he even brought a reserve honorary deputy sheriff up here to testify that he reported to him on the 27th of November, 1982, the day after the original conversation, and it has been the defendant's position that he was just playing along because as soon as he could get some concrete information it was going to be reported to the sheriff or the district attorney's office, or the proper law enforcement officers. And I just don't believe, when I look at it as a whole, that the facts justify the inclusion of an entrapment charge.

DEFENSE LAWYER:

So that we make our position perfectly clear in the record, if I could, we feel like, your Honor, that the jury could believe that the defendant was indeed trying to—we believe the jury could believe that prior to November 26th Lee Nations had not engaged in the sale or possession or any dealings in any kind of stolen property, but that the contact with Jerry Street which came about immediately prior to November 26th, 1982, and the subsequent conversations that he had, induced him to engage in this activity. And we feel like the facts in this case raise that reasonable inference, that he did—that he was induced to act in this way by the act of Jerry Street, who was a government agent; and that the jury could disbelieve the defendant's testimony regarding the conversations he had with Bob Calvey [Nations' prominent friend], but nevertheless believe that the true facts of the case were that he was induced to have the conversations that he had by the statements that had been made to him by Jerry Street; and for that reason, in addition to the other reasons we stated before, we feel like we are entitled to the defensive theory of entrapment.

■ In light of *United States v. Henry*, 749 F.2d 203 (5th Cir.1984) (en banc), Nations' denial of criminal intent by testifying about an investigation defense did not prevent him from arguing to the jury an entrapment theory of defense and obtaining an entrapment instruction—if the evidence otherwise warranted such an instruction. "If either the government's or the defendant's evidence fairly raises the issue of entrapment, the defendant may take the stand or adduce evidence on his own behalf that negates his criminal intent and yet be

entitled to have his entrapment defense decided by the jury." *United States v. Henry,* 749 F.2d at 205. *See United States v. Kelly,* 748 F.2d 691, 701 & n. 24 (D.C.Cir. 1984) (defendant sought and properly received entrapment instruction notwithstanding investigation defense). (Nations was tried before the en banc *Henry* decision issued and, thus, the district court did not have the benefit of *Henry* in ruling on Nations' request for an entrapment instruction.)

Because the district court denied an entrapment instruction on the basis of Nations' denial of criminal intent, it never decided whether, in *Henry*'s terms, the "evidence fairly raise[d] the issue of entrapment." The government urges us to affirm denial of the entrapment instruction on this other ground, contending that the evidence of entrapment was insufficient. However, although we concluded that a reasonable jury *would not necessarily have had* a reasonable doubt concerning entrapment, we also conclude that, on the evidence, a reasonable jury *could have had* a reasonable doubt concerning entrapment. Thus, the district court erroneously denied the requested entrapment instruction.

 As a defense, "entrapment is a focus on predisposition—the origin of the criminal intent in issue." *United States v. Henry,* 749 F.2d 203, 213 (5th Cir.1984) (en banc). The critical determination is whether the criminal intent originated with the defendant or with government agents. *United States v. Henry,* 749 F.2d at 208, 213. Two factors guide this determination: (1) the existence of government inducement ("conduct creat[ing] a substantial risk that a person, other than one who is ready to commit it, would commit the offense," *United States v. Jackson,* 700 F.2d 181, 191 (5th Cir.1983)); and (2) the predisposition of the defendant, before contact with government agents, to commit the crime charged, *United States v. Henry,* 749 F.2d 203, 213 (5th Cir.1984) (en banc). Inducement and predisposition are interrelated concepts. *United States v. Jannotti,* 729 F.2d 213, 224 (3d Cir.1984).

In *Henry,* in dicta, we quoted dicta from *United States v. Webster,* 649 F.2d 346, 349 (5th Cir.1981) (en banc), to show that, procedurally in entrapment cases, the defendant must first identify evidence of inducement and then the government must prove predisposition beyond a reasonable doubt. *United States v. Henry,* 749 F.2d 203, 207 n. 5 (5th Cir.1984) (en banc). This brief summary does not, however, fully state the test established by our precedents to determine when the evidence is sufficient to require an entrapment instruction.

The ultimate issue in an entrapment case is proof beyond a reasonable doubt of predisposition. In earlier decisions, therefore, we merged "inducement" and "predisposition" by analyzing government inducement in terms of such obvious predisposition factors as a defendant's eagerness or reluctance to join in the charged criminal conduct. *E.g., United States v. Groessel,* 440 F.2d 602, 606 (5th Cir.1971); *Pierce v. United States,* 414 F.2d 163, 168–69 (5th Cir.1969). In *United States v. Garcia,* 546 F.2d 613, 615 (5th Cir.1977), we observed that "both factors [inducement and predisposition] are necessary to determine whether the [entrapment] defense has been presented by the evidence."

In our most recent decisions, it has become clear that a defendant must make some showing of both inducement and lack of predisposition.

Defendant must first present evidence showing both (1) lack of his predisposition to commit the crime, and (2) some governmental involvement and inducement more than just providing an opportunity or facilities to commit the crime.

*United States v. Andrew,* 666 F.2d 915, 922 (5th Cir.1982). *Accord, United States v. Jackson,* 700 F.2d 181, 186 (5th Cir.1983); *United States v. Fischel,* 686 F.2d 1082, 1085 (5th Cir.1982); *United States v. Leon,* 679 F.2d 534, 538 (5th Cir.1982). These decisions appear to contain the most accurate statement of the rule ascertainable from our precedents addressing *what* the evidence must show to entitle a defendant to an entrapment instruction.

There remains the question of *how much* evidence of inducement and non-predisposition is required to obtain an entrapment instruction. We have noted some uncertainty about the answer to this question. *United States v. Fischel,* 686 F.2d 1082, 1086 n. 2 (5th Cir.1982).

> One line of decisions apparently directs the trial judge to submit an entrapment instruction if the defendant advances any evidence supporting his assertions, regardless of how flimsy or insubstantial. An alternative view requires the defendant to produce "substantial evidence," which has been opaquely defined as more than just a smattering or scintilla.

*Id.* (citations omitted). *See United States v. Leon,* 679 F.2d 534, 539 n. 5 (5th Cir. 1982). In *United States v. Hill,* 626 F.2d 1301, 1303 & n. 3 (5th Cir.1980), the first decision noting the uncertainty, we also observed that "[t]here is little indication, however, that these semantic discrepancies have realistically produced disparate results." Indeed, in both *Fischel* and *Leon* we declined to resolve the uncertainty because either standard would have led to the same result in those cases.

We believe that our previous references to "any evidence" and "more than a scintilla" both point in the same direction—that evidence from which a reasonable juror *could* derive a reasonable doubt as to the origin of criminal intent and, thus, entrapment. Entrapment is not raised by special plea but, rather, by identification or production of evidence. Thus, for the defendant to obtain an entrapment instruction based on the evidence at trial, the evidence ought, at the least, provide a basis for a reasonable doubt on the ultimate jury entrapment issue of whether criminal intent originated with the government. This follows because, if the evidence of entrapment is sufficient to submit the issue to the jury, the district court must instruct the jury to acquit unless the evidence proves beyond a reasonable doubt that the defendant was predisposed—that the criminal intent originated with the defendant.

 Turning to the facts in this case, we first look at the evidence of inducement which the jury might have credited. Street admitted that he acted upon a vendetta in approaching Nations. Nations testified that Street then engaged his cooperation with a tale of financial woes, the need to support a new spouse, and terminal cancer, all the while knowing that Nations' sister recently had died of cancer. We have held that "persuasion or mild coercion" and "pleas based on need, sympathy, or friendship" constitute sufficient inducement to permit jury consideration of the entrapment issue. *United States v. Jackson,* 700 F.2d 181, 191 (5th Cir.1983). *See United States v. McLernon,* 746 F.2d 1098, 1113–14 (6th Cir.1984) (informant "preying upon love and loyalty of special relationship"). *Cf. United States v. Fischel,* 686 F.2d 1082, 1084–85 (5th Cir.1982) (rejecting ludicrous claim of inducement based on "feeling sorry" for a person because the person loaned defendant a cassette recorder). Street's plea, if the jury believed Nations, constituted inducement sufficient to present the entrapment issue to the jury.

As for predisposition, the jury could have credited the testimony that Nations was a businessman with no criminal history or experience and could have rejected the informant Street's testimony to the contrary. In *United States v. Groessel,* 440 F.2d 602, 606–07 (5th Cir.1971), we held that the "unblemished reputation" of the defendant entitled the defendant to an entrapment instruction even though the evidence showed that the defendant "initiated" criminal discussions, where the government's conduct created a substantial risk that the accused committed the crime when he was not otherwise predisposed to do so. *Cf. United States v. Jackson,* 700 F.2d 181, 186–87 (5th Cir.1983) (absence of prior criminal record did not establish entrapment *as a matter of law* ).

Here, Nations did not first approach the government agent Street. Moreover, the jury could have found Nations reluctant to participate in the sale of stolen cars based on the possible existence of two or three October approaches to Nations by Street

and based on Nations' early discussion with a prominent friend about whether to proceed in the venture in order to collect evidence of a possible law-violation to provide to law enforcement officers. *See United States v. Jackson*, 700 F.2d 181, 191 (5th Cir.1983) (evidence of investigation defense also tended to show non-predisposition to commit crime). *Cf. United States v. Henry*, 749 F.2d 203, 208, 213 (5th Cir.1984) (en banc) (defendant resisted informer).[6] And, finally, Nations did not expressly request payment for his contribution to the stolen car sales effort, nor did he receive more than a single $100 payment. This arguable lack of interest in financial profit could have been interpreted by the jury to show that Nations was not predisposed but, rather, merely sought to assist a financially troubled, dying man. *Cf. United States v. Andrew*, 666 F.2d 915, 924 (5th Cir.1982) (affirming denial of entrapment instruction where defendant's "actions were clearly motivated by the monetary aspects of the transaction"). This evidence was ample to raise the entrapment defense.

▮ We appreciate the difficulty the trial court confronted in making its pre-*Henry* evaluation of Nations' request for an entrapment instruction. Moreover, Nations' investigation defense decreased the probable success of his entrapment defense, as simultaneous denial of criminal intent and advancement of an entrapment theory almost always will damage the likelihood of success of such defense. *See United States v. Kelly*, 748 F.2d 691, 701 n. 24 (D.C.Cir.1984); *United States v. Demma*, 523 F.2d 981, 985 (9th Cir.1975). Nevertheless, likely or unlikely to be successful, a defendant is entitled to a jury's consideration of the entrapment defense if there is evidence from which a reasonable

jury could find that acquittal is required because of entrapment.

There is a temptation for judges to decide that a defendant's claim is too incredible. This temptation is reinforced by concern that a defendant is being allowed to escape the reach of settled legal rules by erroneous arguments to a jury in an abuse of the roles of counsel and the court. Moreover, there may be concern that such objective limitations by the judge are necessary to prevent confusing "proofs" of law as an evidentiary fact. Each such concern is understandable but unfounded. The quick answer is that, apart from constitutional strictures[,] ... such limitations upon defendants serve no practical purpose, for they will not materially affect the nature of the trial evidence or the trial. *A jury is the ultimate discipline to a silly argument.*

*United States v. Burton*, 737 F.2d 439, 442–43 (5th Cir.1984) (emphasis added) (Higginbotham, J.).

### V.

For the foregoing reasons, the judgment of conviction is REVERSED. The case is REMANDED for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

**6.** None of our precedents requires evidence of reluctance or hesitation in order to obtain an entrapment instruction. Neither is the ultimate measure of entrapment. The ultimate measure is origin of the criminal intent (defendant or government), and evidence of reluctance or hesitation is relevant proof of that. The jury, however, is not instructed to acquit or convict based on reasonable doubt as to reluctance or hesitation—but, rather, on the basis of reasonable doubt as to the origin of criminal intent. Where there is sufficient other evidence that the criminal intent originated with the government (evidence of inducement and non-predisposition), an entrapment instruction must be given.