**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jimmie T. DUVALL and Alfred Grant Revette, Defendants–Appellants.**

**No. 87–4663.**

United States Court of Appeals, Fifth Circuit.

May 24, 1988.

---

Alvin M. Binder, Jackson, Miss., Daniel P. Self, Jr., Meridian, Miss., for defendants-appellants.

Ruth R. Harris, Richard T. Starrett, Asst. U.S. Attys., Jackson, Miss., for plaintiff-appellee.

Before REAVLEY, KING and SMITH, Circuit Judges.

PER CURIAM:

Two county officials appeal their convictions for bribery and conspiracy because they took kickbacks in purchases of county materials. They challenge several aspects of their trial, including the omission of a particular jury instruction, the admission into evidence of the government's tape recordings, the sufficiency of the evidence to sustain the jury's verdict, and a supplemental instruction given during jury deliberations. We find no reversible error and affirm the convictions.

I.

A federal grand jury in Mississippi indicted Jimmie T. Duvall ("Duvall") and Alfred Grant Revette ("Revette") in April 1987 for conspiracy, bribery, mail fraud, extortion, and aiding and abetting an offense against the United States.[1] On July 30, 1987, fol-

---

1. Specifically, the indictment alleged that Duvall and Revette conspired to commit bribery and mail fraud in violation of 18 U.S.C. § 371 (count one), accepted bribes as officials of a local government agency in violation of 18 U.S.C. § 666(b) (count two, Duvall and count three, Revette), engaged in fraudulent schemes using the United States mails in violation of 18 U.S.C. § 1341 (counts four through eight, Duvall and counts nine through thirteen, Revette), committed extortion as public officials in violation of 18 U.S.C. § 1951 (counts fourteen and fifteen, Duvall and counts sixteen and seventeen, Revette), and aided and abetted an offense against

lowing eight days of trial in the United States District Court for the Southern District of Mississippi, a jury convicted each defendant of two offenses, finding both defendants guilty of conspiracy as alleged in count one of the indictment and bribery as alleged in count two against Duvall and count three against Revette. The jury acquitted the defendants of all remaining charges in the seventeen-count indictment. The district court denied a motion for a judgment of acquittal or, alternatively, a new trial, and this timely appeal followed.

The facts, briefly stated in the light most favorable to the government, are as follows.[2] Duvall and Revette were county supervisors in Wayne County, Mississippi, with the authority to purchase materials for the county's maintenance of roads and bridges. Duvall was responsible for the third district; Revette controlled the first district. While performing their duties as county supervisors, both engaged in fraudulent sales transactions with corrupt vendors. The illegal practices included accepting cash kickbacks, or percentage payments, on purchases from the vendors and "busting" invoices, or billing the county for undelivered goods and splitting the purchase price with the vendors. Between May 1983 and June 1986, Duvall received $955 in illegal payments from Ray Davis ("Davis"), who owned and operated Davis Chemicals. From September 1984 through April 1986, Revette received $1730 from Davis.

In August 1984, John Burgess ("Burgess"), the owner of Mid–State Pipe and Supply Company ("Mid–State"), reported the illegal practices of county supervisors in Mississippi to the Federal Bureau of Investigation and agreed to cooperate in an operation to uncover dishonest officials. An undercover agent, Jerry King ("King"), began an investigation posing as a Mid–State salesman named Jerry Jacobs. Acting on information obtained through Burgess from a corrupt county supervisor named Buddy Crocker ("Crocker"), King contacted Revette in February 1985 to solicit his business. In their first meeting on February 28, King informed Revette that Revette would receive twelve percent of the price on each order placed with Mid–State; Revette expressed interest in dealing with King and requested copies of King's price list for other county supervisors. On March 8, Revette introduced King to other supervisors, including Duvall. During this meeting, Revette told Duvall that King "will help us out," and after King repeated his offer to pay kickbacks, both supervisors indicated that they agreed with his proposal.

On March 20, 1985, Revette first ordered supplies from Mid–State and informed King that Duvall would soon call to place an order as well. King paid Revette a $100 kickback when Revette signed Mid–State's invoice for the order about a week later, and on April 17, Revette again ordered goods from King and received $100. On the latter occasion, King met Davis and saw him give money to Revette; Revette told King that the money was for Duvall. Two days later, King met with Davis to discuss working together as salesmen to sell their products, and without realizing King's true identity, Davis confirmed that he made payments to both Duvall and Revette. On April 29, Duvall placed his first order with King and agreed to King's suggestion that they "bust" the invoice; King paid Duvall $200, his share of the undelivered goods, for approving the fraudulent invoice.

During the course of more than a year, Duvall and Revette met repeatedly with King to discuss fraudulent schemes and transact illegal sales. At times, the de-

the United States in violation of 18 U.S.C. § 2 (counts four through eight, fourteen and fifteen, Duvall and counts nine through thirteen, sixteen and seventeen, Revette).

**2.** We approach the facts in this manner because in reviewing the jury's verdict, we "must consider the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988) (footnote omitted). At different points in our analysis, we will supplement the facts given here with details of particular relevance to other issues presented.

fendants placed orders for each other, relayed money to each other, purported to speak for each other, and agreed to discuss particular moneymaking schemes with other county supervisors. On one occasion, Duvall and Revette met with King together, and each completed a busted-invoice transaction with King during the meeting. For each illegal transaction, Mid–State submitted an invoice to Wayne County and received payment from the county for the full amount of the invoice, even though Mid–State never delivered some materials according to King's agreement with the defendants. Duvall received $910 from King in six transactions, and Revette received $850 from King in eight transactions.

At trial, the government introduced tape recordings of King's conversations with Duvall and Revette accompanied by transcripts of the recordings, which show the defendants agreeing to King's illegal proposals, discussing how to structure their illegal transactions, and directing him to submit invoices for undelivered goods. The witnesses testifying against the defendants included King, Davis, and the county supervisors' purchase clerk, who verified documentation of the fraudulent sales. Duvall and Revette admitted their dealings with King but asserted the defense of entrapment; they denied Davis' accusations that he also paid them kickbacks. Both defendants testified at trial, and Burgess testified as the defendants' adverse witness.

On appeal, Duvall and Revette raise essentially four points of error:[3] (1) the district court wrongly refused to instruct the jury concerning a "gratuity" defense; (2) the tape recordings should have been excluded; (3) there was insufficient evidence to support their conspiracy or bribery convictions; and (4) the district court improperly responded to a question from the jury during its deliberations.[4] We further explain the defendants' position and address each allegation in turn below.

## II.

### A. The Jury Instructions

The defendants assert that the district court erred by refusing to give their proposed jury instruction which read: "The Court instructs the jury that merely receiving unsolicited gifts or gratuities does not constitute the offenses charged in the indictment." They rely on *United States v. Washington*, 688 F.2d 953 (5th Cir.1982), where we held that a county supervisor charged with mail fraud was entitled to a similar instruction. In that case, the indictment alleged that the defendant devised a scheme to defraud the county by agreeing to purchase supplies at inflated prices in return for receiving bribes and kickbacks from the sellers. *See id.* at 955. The defendant denied accepting bribes and asserted instead that he received unsolicited gifts by mail from an unknown source. He testified at trial that he was uneducated, that he had sometimes received gifts from former customers by mail in his prior occupation, that he saw nothing unusual about receiving unsolicited gifts from business associates, and that he understood that anyone could legally accept unsolicited merchandise received by mail without obligation. We reasoned that because the government's allegations required proof of a scheme involving bribes—as opposed to gratuities—merely receiving unsolicited

---

3. Initially, the defendants also asserted that the district court lacked jurisdiction to convict them of bribery under 18 U.S.C. § 666(b) because the government failed to plead or prove the involvement of federal funds. Before we took this case under advisement, however, we decided *United States v. Westmoreland*, 841 F.2d 572, 573 (5th Cir.1988). In a subsequent letter brief, the defendants conceded that *Westmoreland* controls the first issue raised in their appeal. Therefore, we need not address it.

4. Concerning the jury's deliberations, the defendants also contend that the trial judge compounded the adverse impact of the supplemental instruction he gave and coerced a verdict because he required the jurors to continue deliberating without providing them an evening meal. The record shows that the judge repeatedly offered the jurors an opportunity to break for dinner, and the defendants' suggestion that the deliberative process was somehow tainted by the jurors' decision to continue is unsupported by fact or law. Thus we find it meritless.

gifts would not constitute the offense charged. *See id.* at 957–58. We concluded that the instruction was a correct statement of law and had evidentiary support. *See id.* at 958. Thus we reversed the defendant's conviction because the trial court refused the instruction. Duvall and Revette contend that *Washington* controls this case; their argument is misguided and overly simplistic.

■ At the outset, the defendants incorrectly argue that we apply a *per se* rule of reversal in reviewing the district court's action. True, the court in *Washington* stated that a criminal defendant is entitled to a separate jury instruction on a theory of defense with legal and evidentiary foundation and that to refuse the instruction is reversible error. *See id.* Moreover, in reviewing the sufficiency of the evidence underlying a legal defense, "we need only search for *any* evidence" to support the defense, " 'regardless of how weak, inconsistent, or dubious the evidence of [the defense] may have been.' " *United States v. Curry,* 681 F.2d 406, 413, 416 (5th Cir. 1982) (emphasis in original) (quoting *United States v. Goss,* 650 F.2d 1336, 1345 (5th Cir. Unit A 1981)). However, our more recent cases clarify the applicable standard of review and expressly reject the *per se* approach suggested by statements in *Washington* when taken out of context.[5] *See United States v. Rubio,* 834 F.2d 442, 446–47 (5th Cir.1987); *United States v. Hunt,* 794 F.2d 1095, 1097–98 (5th Cir. 1986); *United States v. Gray,* 751 F.2d 733, 735–36 (5th Cir.1985); *United States v. Fooladi,* 746 F.2d 1027, 1030–31 (5th Cir.1984).

The issue that we must decide is whether the district court abused its discretion by refusing the defendants' proposed jury instruction in this case. *See Rubio,* 834 F.2d at 450; *Hunt,* 794 F.2d at 1097. In reviewing the district court's decision, we afford the trial judge " 'substantial latitude in tailoring his instructions as long as they fairly and adequately cover the issues presented by the case.' " *United States v. Kimmel,* 777 F.2d 290, 293 (5th Cir.1985) (quoting *United States v. Pool,* 660 F.2d 547, 558 (5th Cir. Unit B 1981)). Accordingly, we have adopted the following rule:

> A trial judge's refusal to deliver a requested instruction constitutes reversible error if, but only if, the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.

*United States v. Grissom,* 645 F.2d 461, 464 (5th Cir. Unit A 1981); *see Rubio,* 834 F.2d at 447; *Hunt,* 794 F.2d at 1097. In short, we may not overturn the defendants' convictions on the ground that the district court omitted their instruction from its jury charge unless "that instruction is legally correct, represents a theory of defense with basis in the record which would lead to acquittal, and ... that theory is not effectively presented elsewhere in the charge." *Rubio,* 834 F.2d at 447.

■ Even if we limit our inquiry to whether the record supports the defendants' instruction and assume—without deciding—that the "gratuity" theory is a legal defense to the charges against Duvall and Revette,[6] we doubt that there is an

---

**5.** A closer look at our opinion in *Washington* shows that we based the decision, at least in part, on the prejudicial effect of omitting the instruction. At trial, part of the prosecution's theory was that Washington engaged in a fraudulent scheme because he retained unsolicited gifts that, under Mississippi law, became public property when received by a public official and therefore should have been delivered to the county. *See* 688 F.2d at 957. We noted that the retained gifts theory differed significantly from the bribery theory charged in the indictment. *See id.* at 957 n. 5. Thus we viewed the request-

ed instruction as providing the jury a critical point of law. *See id.* at 958 n. 6.

**6.** We note that the "bribery" charges were brought under a federal statute that does not, by its terms, expressly prohibit bribes and allow gratuities. *See* 18 U.S.C. § 666(b) (Supp.1984). In considering the requisite level of intent that the government must prove to convict a defendant of violating that statute, one court noted that, because the statute is silent on the subject of intent, it is unclear whether Congress intended to replicate the bribery or the gratuity provisions of 18 U.S.C. § 201 when it enacted the

evidentiary basis in the trial record for the instruction. The defendants primarily rely on their testimony that the payments they received from King were "commissions." They argue that King represented himself as a co-owner of Mid–State who was willing to earn less profit in order to establish his business and that he charged a lower price than what a state list established to be a "good" price. In their view, the money he paid them—a share of his commission—was a mere gratuity that was unsolicited by them and did not cost the county anything. Ignoring the defendants' testimony that some payments they received were not for legitimate orders, the flaw in their argument is that, even under this scenario, they accepted payments that cannot be deemed gratuities rather than bribes or kickbacks.

As we stated in *Washington:* "By definition a bribe is 'money or favor bestowed on or promised to a person in a position of trust to pervert his judgment or influence his conduct;' it is 'something that serves to induce or influence.'" 688 F.2d at 957 (quoting Webster's Seventh New Collegiate Dictionary). We also noted that bribery occurs when a gift to a government official "is coupled with a particular criminal intent" and connotes "'some more or less specific *quid pro quo* for which the gift or contribution is offered or accepted'" and "[s]imilarly, a 'kickback' has been defined as 'a percentage payment ... for granting assistance by one in a position to open up or control a source of income.'" *Id.* at 957 n. 4 (quoting *United States v. Arthur*, 544 F.2d 730, 734 (4th Cir.1976) and *United States v. Hancock*, 604 F.2d 999, 1002 (7th Cir.1979)). Thus the distinguishing characteristic of a bribe or kickback is not that it damages the public because it causes the giver to demand a higher price from the government but because it subverts a government official's loyalty and judgment. Duvall and Revette admitted that they or-

dered goods from King, at least in part, because he offered them money in exchange for giving his company the government's business and that the amount of money varied with the amount of their orders. Thus regardless of whether the defendants received payments at the government's expense, they *accepted* money that King promised them to induce or influence their official conduct.

Finally, the district court's instructions, viewed as a whole, thoroughly eliminated any possibility that the jury might convict Duvall and Revette of conspiracy and bribery merely because they received unsolicited gifts. The district court repeatedly stated that the charges against the defendants required the government to prove beyond a reasonable doubt that Duvall and Revette committed the alleged acts with criminal intent and not for an innocent reason. More importantly, the court instructed the jury that each of the defendants committed the alleged bribery offense if he "corruptly" accepted payments for or because of his official conduct and if the acceptance was done "knowingly" and "willfully," and the court defined each of those terms. Furthermore, the jury instructions contained the following statement of law:

> The crimes charged in this case require proof of specific intent before the defendants can be convicted. Specific intent means more than the general intent to commit the act. To establish specific intent the government must prove beyond a reasonable doubt that the defendants knowingly did the acts which the law forbids, purposefully intending to violate the law.

In short, the trial record contains instructions that provided an adequate legal basis for Duvall and Revette to present to the jury a "gratuity" defense, and a failure to pursue the defense or to persuade the jury

statute. *See United States v. Jackowe*, 651 F.Supp. 1035 (S.D.N.Y.1987). In this case, it is unnecessary to address the issue because, as discussed further below, the government in this case undertook to prove bribery. We take the

opportunity to emphasize, however, that the classic distinction between a gratuity and a bribe is the purpose for the payment or, in other words, the underlying intent associated with the payment.

is not a basis to complain on appeal.[7] Therefore, we conclude that the omission of the defendants' requested instruction was not reversible error, if indeed it was error at all.

*B. The Tape Recordings*

█ At trial, the defendants objected to the introduction of the government's tape recordings on the grounds that King violated a federal statute, 18 U.S.C. § 2518(3)(a)–(c), and an agency policy or regulation by taping their conversations without first obtaining sufficient authorization. After hearing arguments by counsel and allowing voir dire examination of King, the district court overruled the objections. The court relied on *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), where the Supreme Court declined to exclude evidence acquired in violation of a federal agency's internal rules but not in violation of federal statutes or the Constitution. The district court concluded that in this case, like *Caceres*, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20, which regulates electronic surveillance, did not apply because King was a party to the conversations and that the government's agents did not violate either the fourth amendment or the due process clause of the fifth amendment. Therefore, because the defendants' allegations paralleled those in *Caceres*, the district court followed the Supreme Court's lead and refused to exclude the tapes.

On appeal, Duvall and Revette pursue their objections on the statutory and constitutional grounds rejected by the district court, arguing that King's conduct violated 18 U.S.C. § 2511 and the fourth and fifth amendments. Clearly, the defendants' statutory and fourth amendment arguments are meritless for the reasons stated by the district court and set forth in *Caceres*. *See* 440 U.S. at 749–51, 99 S.Ct. at 1470–71; *see also United States v. White*, 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); 18 U.S.C. § 2511(2)(c).

The defendants' fifth amendment argument is a curious one not specifically addressed by the district court at trial or the Court in *Caceres:* they urge us to invoke the exclusionary rule in order to remedy what they perceive as outrageous government conduct during the criminal investigation that constituted a denial of due process. Actually, if the defendants could establish that claim, it might bar their prosecution and require dismissal of the indictment. *See United States v. Nations*, 764 F.2d 1073, 1076 (5th Cir.1985). Indeed, Duvall and Revette initially presented this argument to the district court in both their pre-trial motions to dismiss the indictment and to suppress the evidence. Essentially, the defendants contend that King's conduct was outrageous because he lacked sufficient evidence of their criminal predispositions before approaching them to justify targeting them for investigation, taping their conversations, or entrapping them in his undercover operation. Moreover, the defendants also assert that the government failed to prove predisposition beyond a reasonable doubt and thus their entrapment defense entitles them to judgments of acquittal as a matter of law. In short, under the guise of challenging the admissibility of evidence, the defendants essentially challenge the sufficiency of the evidence concerning predisposition.

Viewed either as a matter of due process or of entrapment, we find no merit in the defendants' contentions. First, while the due process clause prohibits outrageous conduct by law enforcement agents, " 'a due process violation will be found only in the rarest and most outrageous circumstances.' " *United States v. Arteaga*, 807 F.2d 424, 426 (5th Cir.1986) (quoting *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir.1985)). In addition, the defense generally requires "proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity." *Nations*, 764

7. Unsurprisingly, the defendants' arguments before the jury focused on an entrapment defense—that King implanted the criminal intent in their minds—and not on a theory that the payments from King were gratuitous.

F.2d at 1077 (emphasis in original). Here, the defendants complain merely that King targeted them without sufficient evidence that they were predisposed to commit the crimes being investigated and that he was a persistent and persuasive salesman. We have prohibited the government from targeting defendants in an investigation only where the government employs a contingent fee informant and directs him to implicate specific individuals. *See Yater*, 756 F.2d at 1067. Moreover, we have found no due process violation in numerous cases involving more egregious government conduct. *See, e.g., United States v. Fortna*, 796 F.2d 724, 735 (5th Cir.1986); *Nations*, 764 F.2d at 1077; *United States v. Tobias*, 662 F.2d 381, 386–87 (5th Cir. Unit B 1981). Thus we conclude that King's behavior did not offend the Constitution.

■ Second, in considering an entrapment defense, "[t]he critical determination is whether the criminal intent originated with the defendant or with government agents." *Nations*, 764 F.2d at 1079; *see United States v. Henry*, 749 F.2d 203, 213 (5th Cir.1984) (en banc). Where a defendant properly raises the defense, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the charged crime. *See Nations*, 764 F.2d at 1077; *Henry*, 749 F.2d at 207 n. 5. However, to declare entrapment as a matter of law requires the conclusion that no reasonable jury could find that the defendant was predisposed to commit the offense. *See Rubio*, 834 F.2d at 450; *Nations*, 764 F.2d at 1077. Moreover, in reviewing the sufficiency of the evidence concerning predisposition, we must view the evidence most favorably to the government. *See Rubio*, 834 F.2d at 451. In this case, a reasonable jury could find that the defendants were predisposed to commit their crimes. There was no "overwhelming evidence of serious resistance" by Duvall or Revette, and a jury could view King's testimony and the tape recordings as showing each defendant as an "eager, active participant." *See Nations*, 764 F.2d at 1077. Davis' testimony that he began paying kickbacks to both defendants before the government became involved also indicates that the government did not create the crimes. Understandably, the defendants view the evidence quite differently, but we conclude that their entrapment defense rested on factual issues and credibility choices that the district court properly left to the jury.

## C. The Sufficiency of the Evidence

■ In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the government and determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We have clarified the standard:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). With these rules in mind, we turn to the criminal charges against Duvall and Revette and evaluate the evidentiary support in the trial record for the legal elements that the defendants allege lacked sufficient evidence.

### 1. Conspiracy

■ The elements of a conspiracy are "(1) an agreement between two or more persons to commit an offense and (2) the commission of an overt act by any one of them in furtherance of the agreement." *United States v. Medrano*, 836 F.2d 861, 863 (5th Cir.1988). In this case, count one of the indictment charged Duvall and Revette with conspiracy to commit bribery

and mail fraud;[8] it specifically alleged thirteen overt acts done to accomplish the conspiracy's purpose and incorporated the fraudulent transactions alleged in the mail fraud counts against each defendant. The defendants contend that the government failed to prove the existence of an agreement to commit the substantive offenses because, as county supervisors responsible for different districts, they had separate spheres of authority, did not control or influence each other's purchases, and acted independently of one another. Furthermore, they argue that the only evidence showing that they acted together in any illegal activity was testimony that one would carry money to the other if asked—evidence that they claim is insufficient by itself to prove that they agreed with each other to do something wrong or that they did anything to effect an agreement. Concerning the commission of an overt act, the defendants also assert that because the jury acquitted them of mail fraud, it necessarily found that they did not commit an act of mail fraud and therefore it could not have found that they committed an act in furtherance of a mail fraud conspiracy. In other words, the defendants contend that the jury's verdicts are inconsistent and that acquittals on the substantive counts should operate as an acquittal on a conspiracy count associated with them. Finally, they contend that the jury's questions about entrapment during its deliberations enable us to determine that the acquittal verdicts are based on entrapment and therefore they should be acquitted of conspiracy because the government agent was involved in that crime as well. None of these arguments has merit.

█ The defendants apparently misperceive the nature of conspiracy and the type of evidence that may prove it. The crime of conspiracy is the agreement to commit an unlawful act where one party to the agreement does any act, even one that itself is not a crime, to accomplish the con-

spiracy's purpose; in other words, the defendants need not have acted jointly to effect their agreement or have committed the crime that was its object. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). Moreover, "[b]oth the fact of conspiracy and a defendant's participation in it may be proved by circumstantial evidence." *United States v. Cook,* 793 F.2d 734, 736 (5th Cir.1986). In this case, the government adduced ample evidence to prove that Duvall and Revette agreed to commit the alleged crimes. King's testimony alone showed that the defendants discussed their illegal purchasing schemes, relayed fraudulent orders and illegal payoffs for each other, considered the inclusion of other county supervisors, and devised ways to avoid changes in state purchasing laws. Furthermore, the defendants misstate the relationship between county supervisors and the extent of their collective responsibilities; although each supervisor approves the purchase, and acknowledges the receipt, of goods in his particular district, the board of county supervisors as a whole must formally approve payment. Thus a county supervisor engaging in fraudulent purchasing practices presumably either conceals his illegal activities from the other supervisors in his county or obtains their consent. By returning a guilty verdict, the jury found from the evidence before it that Duvall and Revette agreed to commit the substantive offenses and therefore committed the crime of conspiracy.

█ The defendants also misunderstand our role in reviewing the jury's verdict. It is not possible, or even proper, for us to speculate about the basis of the jury's decision, and we would not presume to know whether the jury acquitted the defendants of mail fraud for inadequate proof of the fraudulent acts, for adequate proof of the entrapment defense, or for some other reason. The verdicts in this case need not be consistent, and a convic-

8. Because count one charged the defendants with conspiring to commit two substantive offenses, they contend that the indictment is defective because it is duplicitous. This contention is frivolous. Clearly, count one charged

the defendants with the single crime of conspiracy; the fact that the conspiracy had two objects does not make the indictment alleging it duplicitous. *See Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942).

tion on any count may stand if it is supported by the evidence. *See United States v. Varkonyi*, 611 F.2d 84, 86 (5th Cir.1980). Moreover, the offense of conspiracy to commit bribery and mail fraud and the substantive offense of mail fraud are separate and distinct crimes. *See Iannelli v. United States*, 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). In any event, a finding of entrapment would not necessarily dispose of the conspiracy allegations that concerned Davis, a private citizen acting independently of the government.

2. Bribery

 Duvall and Revette primarily challenge the district court's ruling on the elements of bribery under the federal statute that they allegedly violated.[9] They contend that the statute, section 666(b) of Title 18 of the United States Code, required the government to prove that they accepted bribes with a value of more than $5000. *See* 18 U.S.C. § 666(b) (Supp.1984). Because the evidence showed that Duvall only received a total of $1865 and Revette received $2580, the defendants argue that the proof was insufficient to convict them of the bribery charges. We did not consider this aspect of the statute in our prior decision interpreting it. *See United States v. Westmoreland*, 841 F.2d 572, 575 n. 2 (5th Cir.1988). However, the issue is easily resolved because the defendants' interpretation is inconsistent with the plain meaning of section 666(b).

In interpreting a criminal statute, courts "generally must follow the plain and unambiguous meaning of the statutory language." *United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed. 2d 536 (1985). At the time of the defendants' offenses, section 666(b) provided punishment for an agent of a local government agency (such as Wayne County), who

solicits, demands, accepts, or agrees to accept *anything* of value from a person or organization other than his employer or principal for or because of the recipient's conduct in any transaction or matter or a series of transactions or matters involving $5,000 or more concerning the affairs of such ... local government agency....

18 U.S.C. § 666(b) (Supp.1984) (emphasis added). From simply reading the statute, it is clear that the $5000 figure qualifies the transactions or series of transactions that the recipient of the bribe carries out in exchange for receiving "anything of value." The wording of the section does not place a value on the bribe, and the defendants point to nothing in the statute, or in its legislative history, to suggest the $5000 qualification that they urge us to adopt. Thus we conclude that the district court's view of the law was correct, and under that view, the evidence is undoubtedly sufficient.

D. *The Supplemental Instruction*

During the jury's deliberations, the jury foreman sent several notes to the trial judge that required responses, and the judge discussed each one with counsel for the government and the defendants before answering. The first note asked for "a simple explanation of entrapment," and with both parties' consent, the judge sent the jury copies of his two instructions concerning entrapment. Similarly, the sixth note read: "If we vote not guilty by entrapment, does that cover all the charges, or do we also vote on the other charges?" From this question, the judge concluded that the jury failed to understand that the entrapment defense did not apply to the charges involving Davis, a private citizen who did not participate in the government's undercover operation. Believing that the entrapment instructions already repeated for the jury did not adequately explain that point, the judge declined the defendants'

---

9. In addition, they echo the arguments that we previously rejected concerning conspiracy—that because the bribery counts relied on the transactions alleged in the mail fraud counts as the transactions that involved bribes, their acquittals on the mail fraud charges are inconsistent with guilty verdicts on the bribery charges, and that because we can presume that their acquittals rest on a jury finding of entrapment, they should have been acquitted of the bribery charges as well. To these arguments, our responses are the same as above.

suggestion that he respond by merely informing the jury to be guided by his previous instructions and "vote each charge individually." Instead, the judge replied in part:

> The entrapment defense applies only to Agent King, not to Ray Davis. Accordingly, as to any counts alleging wrongful transactions involving Ray Davis, you must reach a decision of guilt or innocence as to those transactions without considering the entrapment defense. Counts I, II, and III have allegations involving both Davis and King. Counts XV and XVII have allegations involving only Davis.

The judge's comments also included the response requested by the defendants, referring the jurors to his earlier instructions and reminding them to consider each count separately. The defendants objected to the judge's response "because it's now calling direct attention to apparently testimony of Jerry King and apparently testimony of Ray Davis," presumably that is, because it emphasized the testimony of King and Davis.

On appeal, the defendants complain that the supplemental instruction was unclear, misleading, incomplete, and unbalanced and that the trial judge conveyed a message to the jury that "even if you find entrapment, you should convict the defendants of something." They do not contend, however, that the judge's instruction misstated the law, improperly commented on the evidence, or assumed disputed facts. Instead, the defendants assert that the judge unduly favored the government and that he could have equalized his statements by identifying the counts to which the entrapment defense did apply rather than only those to which it did not, by explaining that other defenses besides entrapment applied to the counts involving Davis, and by reiterating the government's burden of proving each and every element. Then, they say, "the instruction might have been acceptable."

■■■ The trial judge retains his discretion to tailor his jury instructions when he must supplement them during the jury's deliberations. *See Fortna*, 796 F.2d at 741. In supplementing his instructions, however,

the judge has a duty to clear away the confusion and difficulty over an issue that the jury expresses. *See United States v. Carter*, 491 F.2d 625, 633 (5th Cir.1974). Furthermore, a supplemental charge must be considered as a whole and in light of instructions already given. *See id.* In this case, we perceive no abuse of the trial judge's discretion. The defendants did not suggest the improvements that they now find advisable when the trial judge read his proposed supplemental instruction and specifically asked the defendants for their suggestions. We fail to see how their objection below apprised the judge of the deficiencies that they raise here, and thus we decline to hold the judge to the omniscient standard that the defendants would have us impose. We believe that the judge fairly attempted to be responsive to the jury's specific question of law, and beyond merely providing all of his prior instructions— which apparently did not adequately cover the point of the jury's confusion—the defendants are now raising alternatives that they never asked the judge to consider. Moreover, we find no merit in the defendants' contention that they were prejudiced by any subtle emphasis in the judge's comments. In short, we find no reversible error.

### III.

For the above reasons, the defendants' convictions are

AFFIRMED.