**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George Wayne WASHINGTON,**
**Defendant-Appellant.**

**No. 82–4045.**

United States Court of Appeals,
Fifth Circuit.

Sept. 23, 1982.

Jim Waide, West Point, Miss., for defendant-appellant.

Alfred E. Moreton, III, Asst. U.S. Atty., Glen H. Davidson, U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before RUBIN and JOHNSON, Circuit Judges, and PARKER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

A county official was charged, under the mail fraud statute, with devising a scheme to defraud the county through an agreement to purchase supplies for the county at inflated prices in return for concealed bribes and kickbacks from the sell-

ers. One defense raised by the defendant's testimony was that he had only received unsolicited gifts from an unknown source and that "merely receiving unsolicitated gifts ... is not a crime." Because the court refused to charge the jury on this defense theory, we reverse the conviction and remand for a new trial.

George Wayne Washington was a member of the Board of Supervisors of Pontotoc County, Mississippi. Each member of the Board had responsibility for purchasing supplies for use in the district he represented. The indictment, brought under 18 U.S.C. § 1341 (1976),[1] charges that the scheme to defraud involved use of the mail. It is, as it should be, specific in its allegations. It recites:

> It was part of the scheme and artifice that the defendant would and did enter into an agreement with salesmen, representatives, and agents of Thoroughbred and Mid Country [two companies that sold products to the county] to purchase chemicals and other supplies for District Three of Pontotoc County at inflated prices, and the defendant would and did receive, accept, and retain for his personal benefit concealed *bribes and kickbacks* on such purchases, as set forth below:
> .... (Emphasis supplied.)

In columnar form the indictment lists the date of each violation, the "Item(s) Purchased," the "Purchase Price," the "Seller's Actual Cost," and the "Bribe/Kickback."[2]

---

* Chief Judge of the Middle District of Louisiana, sitting by designation.

1. Whoever having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... or for the purpose of executing such scheme or artifice or attempting to do so, places in any post office ... any matter or thing whatever to be sent or delivered by the post office department, or takes or receives any such matter or thing ... shall be fined not more than $1,000 or imprisoned not more than five years or both.

2. This part of the indictment reads:

| Date | Item(s) Purchased | Purchase Price | Seller's Actual Cost | Bribe/Kickback |
|---|---|---|---|---|
| 02 28 77 | 4 – Asphalt Patch Kits | $ 480.00 | $ 60.00 | Grandfather Clock |
| 07 22 77 | 35 gals. Total Weed Killer | 803.25 | 96.25 | 19-Piece Banquet Set |
| 09- 16 77 | 60 gals. Jell Degreaser | 1377.00 | 165.00 | Twin Speaker Stereo Set |
| 11/18/77 | 55 gals. Action Hand Cleaner | 1097.25 | 151.25 | 10 Cup Coffee Maker |

Count one, after describing the scheme and the entire series of transactions, charges Washington with violating the statute by a scheme which included making a single described purchase for the county and with using the mails by causing a check to be mailed in payment for it. Other purchases are charged on the next fourteen counts.

The evidence against him consisted, in part, of records of the sellers that could reasonably be interpreted as showing that, when each order was placed, the sellers promised Washington the corresponding gift certificate or item of merchandise listed in the indictment, testimony that the prices paid were vastly inflated, testimony showing that the sellers followed a pattern of doing business by soliciting government orders from government officials over the telephone, promising a gift or bonus to the official, and other supporting evidence that was ample to justify denial of the motion for a directed verdict of acquittal made at the close of the prosecution's case.

Taking the stand in his own defense, Washington testified that he had an eighth grade education and was, before being elected county supervisor, a farmer and trucker. In his work as a trucker, he had sometimes received gifts from former customers by mail. He saw nothing unusual about receiving unsolicited gifts from people with whom he had done business. He had also seen on television and heard on radio that, if you received something in the mail you did not order, "it was yours. You did not have to pay for it and you did not have to return it." He denied that he had made an agreement to buy merchandise at inflated prices, that he had been promised gifts in return for doing so, and that what he received was a bribe. He admitted receiving the items described in the eleven counts on which he was found guilty and attempted to explain the circumstances under which each occurred. He denied that he knew the source of the gifts. His wife and eleven character witnesses also testified on his behalf.

| Date | Item(s) Purchased | Purchase Price | Seller's Actual Cost | Bribe/Kickback |
|---|---|---|---|---|
| 05/01/78 | 35 gals. Total Weed Killer | 873.25 | 96.25 | 19″ Color TV Set |
| | 35 gals. Extra Heavy Duty Cleaner | 803.25 | 68.60 | |
| 07/21/78 | 55 gals. Jell Degreaser | 1207.00 | 171.05 | $200 Sears Gift Certificates |
| | 55 gals. Fuel Saver | 1097.25 | 130.35 | |
| 10/24/78 | 55 gals. Rust Remover Jell | 1482.25 | 191.95 | $300 Sears Gift Certificates |
| | 55 gals. Rust Preventive Additive | 1427.25 | 149.05 | |
| | 200 lbs. Ice & Snow Melting Pellets | 198.00 | 26.80 | |
| 12/15/78 | 10 gals. Jell Degreaser | 249.50 | | Toaster Oven |
| | 10 gals. Fuel Saver | 199.50 | 29.20 | |
| 02/19/79 | 55 gals. Asphalt Sealer | 1097.25 | 110.00 | $200 Sears Gift Certificates |
| | 55 gals. Extra Heavy Duty Cleaner | 987.25 | 96.25 | |
| 04/03/79 | 55 gals. Complete Vegetation Killer | 1152.25 | 177.10 | $100 Sears Gift Certificates |
| 07/10/79 | 35 gals. Jell Degreaser | 873.10 | 119.35 | $200 Sears Gift Certificates |
| | 35 gals. Industrial Cleaner | 803.25 | 74.55 | |
| | 35 gals. Fuel Saver | 698.25 | 99.40 | |

Thus the defense theory was that Washington had never agreed to buy merchandise at inflated prices, had never made a deal with the sellers, and had never accepted a bribe but had only received unsolicited gifts. At least part of the prosecution theory was that, because under Mississippi law unsolicited gifts received by public officials are public property,[3] Washington had violated the federal statute merely by a scheme that included retaining the merchandise and gift certificates mailed to him and by failing both to report their receipt and to deliver them to the county.

Washington requested that the court charge the jury in part: "[Y]ou may not find the defendant George Wayne Washington guilty merely because he received gifts after making purchases from Thoroughbred Corporation and Mid-Country Corporation or salesmen employed by them. Merely receiving unsolicited gifts from persons who sell goods to the taxpayers of Pontotoc County is not a crime." The court refused to give this charge but said that the defendant could argue to the jury that, "if he just received gifts and there wasn't any scheme to defraud the county, then he's not guilty."

■ Whether or not a public official who receives and clandestinely retains unsolicited gifts when it is his statutory duty to surrender them to a public body engages in a scheme to defraud is not the issue presented to us, for this was not the offense charged in the indictment. The indictment against Washington charged not only that he had made an agreement in advance to buy merchandise at inflated prices but also that he had schemed to receive and retain "concealed bribes and kickbacks." A gratuity is not a bribe. By definition a bribe is "money or favor bestowed on or promised to a person in a position of trust to pervert his judgment or influence his conduct;" it is "something that serves to induce or influence."[4] The indictment, therefore, charged that Washington did more than simply scheme to defraud the county by retaining unsolicited gifts.[5] While the jury might

---

3. Miss. Code Ann. § 31–7–23 (1972) provided in relevant part:

Any rebates, coupons, merit points, gratuities or any article of value tendered or received by any agency from any vendor of material, supplies, equipment, or other articles shall inure to the benefit of the agency making the purchase.

In 1980, the statute was amended in minor detail not pertinent to the issues of this case. Miss. Code Ann. § 31–7–23 (Supp. 1981).

4. Webster's Seventh New Collegiate Dictionary. Thus,

Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent ... "Bribery" imports the notion of some more or less specific *quid pro quo* for which the gift or contribution is offered or accepted.

*United States v. Arthur,* 544 F.2d 730, 734 (4th Cir. 1976). *See also United States v. Bowles,* 183 F.Supp. 237, 250 (D. Me. 1958). Similarly, a "kickback" has been defined as "a percentage payment ... for granting assistance by one in a position to open up or control a source of income." *United States v. Hancock,* 604 F.2d 999, 1002 (7th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 521, 62 L.Ed.2d 420 (1979).

5. This court has often noted that

[i]t is not necessary that the government should have proved each of the charges contained in the indictment, but only necessary that a sufficient number of charges in each count should be proved to constitute a violation of the statute relied upon.

*United States v. Pearson,* 667 F.2d 12, 15 (5th Cir. 1982); *United States v. Georgalis,* 631 F.2d 1199, 1205 (5th Cir. 1980); *Myrick v. United States,* 332 F.2d 279, 281 (5th Cir.), *cert. denied,* 377 U.S. 952, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). It does not follow, however, that the government can ignore its bribery allegations so long as it makes out a statutory violation on the retention of unsolicited gifts theory. The jury's finding of guilt may have been based on the bribery theory. Therefore, appellant was entitled to proper instructions on that theory notwithstanding the existence of other bases to support the conviction. *See United States v. Mandel,* 591 F.2d 1347, 1365 (4th Cir.), *rev'd on rehearing by an equally divided court,* 602 F.2d 653 (4th Cir. 1979) (en banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Moreover, a bribery theory was the one charged and the one responded to by Washington. A conviction based solely on the retained gifts theory would represent such a variance from the allegations of the indictment as to affect the substantive rights of the defendant by failing to sufficiently notify him of the charges against him. *See United States v. Phillips,* 664 F.2d 971, 1036 (5th Cir.

have inferred that Washington did indeed have an "agreement" to receive "bribes and kickbacks" on the purchases, the instruction that merely receiving unsolicited gifts would not constitute the offense charged in the indictment was a correct statement. *See United States v. McNeive*, 536 F.2d 1245 (8th Cir. 1976); *United States v. Rabbitt*, 583 F.2d 1014, 1024–26 (8th Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Goss*, 650 F.2d 1336, 1346 (5th Cir. 1981); *United States v. Mandel*, 591 F.2d 1347, 1365 (4th Cir.), *rev'd on rehearing by an equally divided court*, 602 F.2d 653 (4th Cir. 1979) (en banc), *cert. denied* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

■ The defendant is entitled to a separate instruction specifically charging the jury on his theory of defense if that theory has legal and evidentiary foundation. *United States v. Curry*, 681 F.2d 406, 413 (5th Cir. 1982); *United States v. Grapp*, 653 F.2d 189, 195 (5th Cir. 1981); *United States v. Lewis*, 592 F.2d 1282, 1285 (5th Cir. 1979); *Perez v. United States*, 297 F.2d 12, 15–16 (5th Cir. 1961). Indeed, an instruction specifically embracing the theory of the defense must be given even though the evidence underlying the defense be "weak," "insufficient," or "dubious." *United States v. Goss*, 650 F.2d 1336, 1345 (5th Cir. 1981). If there is evidentiary foundation for the instruction on the given defense, it is error to refuse the instruction. *United States v. Curry, supra*, 681 F.2d at 413; *United States v. Felsen*, 648 F.2d 681, 685–86 (10th Cir.), *cert. denied*, 454 U.S. 861, 102 S.Ct. 317, 70 L.Ed.2d 159 (1981); *United States v. Taglione*, 546 F.2d 194, 198 (5th Cir. 1977).

The government seeks to justify the refusal to give the requested charge because the defendant also testified that he would not have accepted the gifts if he had known their source. This was part of his defense but not the whole of it. Washington was entitled to a fair presentation of the law with respect to his unsolicited gift defense.[6]

■ The refusal of the district judge to give the charge requested by the defendant requires us to reverse the conviction and to remand for a new trial. However, we will consider additional issues likely again to arise if the government retries Washington. Over defense objection, the trial judge charged the jury that, under Mississippi law, "Any rebates, refunds, coupons, merit points, gratuities, or any article of value tendered or received by any agency from any vendor of materials, supplies, equipment, or other articles shall inure to the benefit of the agency making the purchase." [7] The instruction is a correct statement. However, the court should not have given it without further explaining how Mississippi law relates to the federal offense charged. Standing alone, the instruction might be interpreted to mean that, if Washington had violated state law by failing to turn the gifts over to the county, he was guilty of a federal offense. Patently the violation of Mississippi law does not ipso facto constitute a violation of the federal statute. *United States v. Foshee*, 606 F.2d 111, 113 (5th Cir. 1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980); *United States v. Edwards*, 458 F.2d 875, 880 (5th Cir.), *cert. denied*, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972).

■ Moreover, this is not the offense charged in the indictment. The defendant must not be exposed to conviction on the basis that he is corrupt or has violated state law and is unlikely to be punished by state authorities. *United States v. McInnis*, 601

---

1981); *United States v. Womack*, 654 F.2d 1034, 1041 (5th Cir. 1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982).

**6.** Appellee cites *United States v. Bryza*, 522 F.2d 414, 426–27 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976) for the proposition that the instruction was unnecessary. The court in *Bryza*, however, determined that the requested instructions in that case "would merely attempt to emphasize portions of the evidence rather than instruct the jurors on the law." 522 F.2d at 427. The requested instruction in this case would have provided the jury with a critical point of law.

**7.** *See* note 3, *supra*.

F.2d 1319, 1327 (5th Cir. 1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980).

The jury may be instructed that, in determining whether the defendant engaged in a scheme to defraud by the use of the mails, they may consider whether the defendant violated state law. However, this should be accompanied by instruction that the defendant is not charged with violating a state statute and should not be found guilty of the federal offense merely because he violated state law. *Compare United States v. Goss,* 650 F.2d 1336, 1346–47 (5th Cir. 1981).

 As our resume of the evidence indicates, it was sufficient, if interpreted most favorably to the government, to warrant a verdict of guilty. We find no violation of the Federal Rules of Evidence in the introduction of the seller's business records or in the interpretation of those records by a postal inspector.[8] The record does not contain sufficient information to enable us to determine whether Washington's sixth amendment right of confrontation was denied by the admission of the documents. As the Supreme Court recently explained:

> The confrontation clause operates in two ways to restrict the range of admissible hearsay. First, in conformance with the Framer's preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . . the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant . . . .
>
> Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597, 607 (1980)

(footnote omitted). *Accord, United States v. Peacock,* 654 F.2d 339, 349 (5th Cir. 1981). This does not mean that a demonstration of unavailability is required even when the utility of confrontation is remote. *Id.,* at 65 n. 7, 100 S.Ct. at 2538 n. 7, 65 L.Ed.2d at 607 n. 7; *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). It is not necessary for us now to determine the reach of the confrontation clause with regard to business records or other documents that may supply merely technical details necessary to complete the prosecution's case. *Cf. Dutton, supra,* 400 U.S. at 95–96, 91 S.Ct. at 223, 27 L.Ed.2d at 231 (Harlan, J., concurring); Westen, *The Future of Confrontation,* 77 Mich. L. Rev. 1185, 1209 n. 92 (1979); Seidelson, *Hearsay Exceptions and the Sixth Amendment,* 40 Geo. Wash. L. Rev. 76, 92–93 (1971). In the present case, the charge that Washington agreed to purchase at inflated prices and that he accepted "bribes" appears to make at least some of the information in the business records crucial to the government's case, and, therefore, to require satisfaction of the *Roberts* requirements. If the government should again try Washington and if it should again use the sellers' business records, the district court should require adherence to the *Roberts* test.

For the reasons given, the judgment of conviction is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

---

8. The documents were admissible as records of regularly conducted business activities. Fed.

R. Evid. 803(6).