**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary Lee LANCE, Willie Love, and Rebecca Lance, Defendants–Appellants.**

**No. 87–4719.**

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1988.

David O. Bell, Oxford, Miss. (Court-appointed), for Gary Lee Lance.

James D. Minor, Oxford, Miss. (Court-appointed), for Love.

Henry L. Lackey, Calhoun City, Miss. (Court-appointed), for Rebecca Lance.

John M. Alexander, Robert Q. Whitwell, Asst. U.S. Attys., Oxford, Miss., for U.S.

Before KING, JOHNSON and JOLLY, Circuit Judges.

KING, Circuit Judge:

Three criminal defendants appeal their drug conspiracy convictions claiming numerous errors during their jury trial: the discriminatory use of peremptory challenges by the prosecutor during jury selection, the improper admission into evidence of tape recordings made by the government's informant, a prejudicial statement by the trial judge when overruling a hearsay objection to a co-conspirator's testimony, and the judge's refusal to give a defendant's proposed jury instruction. One defendant, who was also convicted of drug possession and unlawful interstate travel, challenges the sufficiency of the evidence against him. Finding no reversible error, we affirm.

I.

In May 1987, a federal grand jury indicted seven persons for conspiring to possess and distribute illegal drugs; the twenty-one count indictment also charged the alleged conspirators with substantive offenses, including possessing marijuana and cocaine with an intent to distribute and traveling in interstate commerce to carry on an illegal activity. *See* 21 U.S.C. §§ 841(a), 846; 18 U.S.C. § 1952. Four defendants pled guilty before trial; the remaining defendants, Gary Lee Lance ("Lance"), Rebecca Lance, and Willie Love ("Love"), received a jury trial in August 1987. The jury convicted each defendant of one count of conspiracy, Lance of three counts of marijuana possession and four counts of unlawful interstate travel, and Love of two counts of marijuana possession and two counts of unlawful interstate travel. In September 1987, the district court individually sentenced the defendants to serve terms of imprisonment—Lance, a total of eighteen years, Rebecca Lance, a total of thirty months, and Love, a total of seven years. The district court also sentenced Lance and Love to serve special

parole terms for the possession counts and ordered each defendant to pay a special assessment. All three defendants timely appealed from the final judgment.

At trial, the government introduced evidence to prove that the defendants participated in a drug conspiracy that involved purchasing illegal drugs in Miami, Florida, and transporting them to Mississippi for distribution. The government's witnesses included two of the indicted co-conspirators, law enforcement agents who conducted an undercover investigation, and other unindicted co-conspirators, one of whom voluntarily cooperated with the government and served as an informant during the investigation. The government introduced audio tapes made by the informant, audio and video tapes made by the agents, and other physical evidence to corroborate the witnesses' testimony—including registration cards from motels in the Miami area showing Lance and Love as guests and telephone company records showing that toll calls from Florida were charged to Rebecca Lance's phone at her mother's house in Mississippi (Rebecca Lance's residence during the time period that trips to Miami allegedly occurred). During the course of the trial, the defendants objected to the tape recordings and portions of the co-conspirators' testimony, but after conducting the inquiry required by *United States v. James*, 590 F.2d 575 (5th Cir.1979) (en banc), the trial judge overruled the objections. Although the trial judge initially announced his rulings out of the jury's presence, he stated during the direct examination of the government's last witness:

> The objection is overruled. Pursuant to the *James* ruling heretofore made by the Court, this Court has found that there is independent evidence of any statements made by the defendants herein, that a conspiracy existed, that the defendants did and, in this case, the co-conspirator, Mr. Alan Henderson, who is

charged in the Indictment, were members of the conspiracy, that this statement—

At that point, Lance's attorney interrupted the trial judge and, after approaching the bench, moved for a mistrial because the judge made these statements before the jury. The defendants' motion was denied, and the trial continued.

The only defendant who testified was Lance. He denied committing any crime and testified that he merely associated with drug dealers and pretended to be one of them because he hoped to gather information that would lead to an investigation of his brothers' deaths, which he suspected were related to drug trafficking. Love claimed to be Lance's part-time employee, merely a paid companion or bodyguard who knew nothing about any drug deals that may have occurred and who could not have made one trip to Florida in October 1985 that, according to co-conspirators, involved a marijuana purchase because he was in jail for an alleged parole violation at the time. Love introduced records from the county jail in Leflore County, Mississippi, to substantiate his story. Rebecca Lance maintained that she was an innocent housewife. The trial judge denied the defendants' motions for acquittal, made both at the close of the government's case and at the close of all the evidence.

Because none of the defendants questions the sufficiency of the evidence concerning the alleged conspiracy,[1] we need not summarize the complex details of all of the government's proof. Rather, because the defendants raise diverse issues on appeal, we will relate additional facts relevant to each issue in the course of our discussion. The Lances argue that the jury's verdict may not properly be affirmed because the trial judge's prejudicial statements in the jury's presence deprived them of a fair trial. In addition, Lance asserts that the trial judge erred by admitting the

---

1. In his original brief, Love challenged the sufficiency of the evidence on all counts. At oral argument, however, he conceded that the government adduced sufficient evidence to merit submitting the question of his guilt for the conspiracy offense to the jury. Instead, he urged a reversal of his conspiracy conviction on the same ground advanced by the Lances—that the trial judge's remarks prejudiced the jury's verdict. We note, however, that Love did not adequately preserve that issue in his appeal because his briefs are silent on the point.

informant's tape recordings and by rejecting a proposed jury instruction stating the theory of his defense. Love contends that the government failed to prove him guilty of the substantive offenses and that, in any event, his convictions must be reversed because racial discrimination tainted the empaneling of the petit jury. We will consider chronologically the alleged defects in the trial proceedings: discriminatory jury selection, admission of the informant's tapes, the judge's prejudicial remarks, and denial of Lance's jury instruction; finally, we will address the government's proof of the substantive charges against Love.

## II.

### A. *The Jury Selection*

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the constitutional guarantee of equal protection prohibits racial discrimination by the government in selecting a particular petit jury to hear a criminal case.[2] If a defendant proves that the government purposefully discriminated against his racial class in exercising its peremptory challenges during jury selection, a conviction by that jury cannot stand. *Id.* at 100, 106 S.Ct. at 1725. In this case, Love, a black man, contends that the prosecutor violated the principles of *Batson* by excluding two black persons from the jury because of their race. In support of this contention, Love points out that when he questioned the prosecutor's use of peremptory challenges at trial, the prosecutor explained his action by stating criteria that, applied evenly, would have caused the prosecutor to strike one of the white jurors.

The circumstances surrounding the empaneling of the petit jury in this case are as follows: The venire contained thirty-six people, five of whom were black. After voir dire, the trial judge excused one white venireman for cause. The prosecutor used two of his peremptory challenges to excuse black persons and four to excuse white persons; he did not use the government's one peremptory challenge in the selection of alternate jurors. The trial judge asked the prosecutor to explain each of his challenges against blacks, although the judge noted that this was not a usual case for raising the issue of racial discrimination because there were three defendants, only one of whom was black. During each response, the prosecutor stated that the challenged person was young, single, and without children or "a substantial stake in the community" and that each appeared inattentive to him during voir dire examination. Following one of the prosecutor's explanations, Love's attorney commented that the excluded person was actually a life-long resident of the community, and he disputed the prosecutor's observations concerning attentiveness and eye contact during voir dire. The prosecutor pointed out that if he had intended to exclude all blacks from the jury, he "had enough challenges to do so." The trial judge accepted the prosecutor's explanations for excluding the two black persons, and the trial began with the jury selected by the parties—the twelve-member panel included two black jurors; one of the two alternate jurors was black.

After the jury retired to deliberate, the trial judge again addressed the jury selection issue. The trial judge recited the above facts and invited responses from the government and Love. After noting biographical information about the black jurors who heard the case, the judge found that the government consistently attempted to select jurors who were older and meaningfully employed and who had children or family responsibilities. The judge then concluded both that Love did not establish a prima facie case of purposeful discrimination and that the prosecutor adequately explained his exercise of peremptory challenges by "articulat[ing] legitimate nondiscriminatory reasons." The judge did not alter his conclusion when Love's counsel pointed out that one white juror was young, single, and only a three-year resident of the county.

■ Because the trial judge required the government to explain its use of perempto-

---

**2.** The prohibition applies to the federal government through the due process clause of the fifth amendment. *See United States v. Forbes,* 816 F.2d 1006, 1009 n. 6 (5th Cir.1987).

ry challenges and because he found no racial discrimination, our task is a simple one. We have previously held, "[t]aking our cue from *Batson*'s repeated analogies to Title VII jurisprudence," that where the record contains an explanation for the government's peremptory challenges, "we will review only the district court's finding of discrimination *vel non.*" *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987) (citations omitted). In addition, we have observed that the Supreme Court suggested in *Batson*, again by reference to a Title VII case, that the district court's ultimate finding should be reviewed under "either a 'clearly erroneous' or 'great deference' standard." *Id.* at 1010; *see also United States v. Williams*, 822 F.2d 512, 515 (5th Cir.1987). This case illustrates the wisdom of deferential review.

■ Love's argument, in essence, is that the prosecutor provided an incredible explanation and that the trial judge erred by accepting it as true. On the record before us, however, we find no basis to disturb the trial judge's decision. Although the prosecutor may have accepted a white juror with some characteristics similar to the black persons he rejected, the prosecutor also gave reasons for his selection that we are unable to evaluate, such as eye contact and demeanor. Moreover, the vagarious process of choosing jurors need not be controlled by a simple equation; it may be influenced by intuitive assumptions that are not fatally suspect merely because they are not quantifiable, *see Forbes*, 816 F.2d at 1010–11, and by the interplay of various factors, *see United States v. Lewis*, 837 F.2d 415, 417 n. 5 (9th Cir.1988). Here, the trial judge personally observed the proceedings and found that the prosecutor's explanation for striking two black members of the venire was not a pretext for racial discrimination. We must accept the judge's credibility choice and affirm his finding on these facts.

### B. The Informant's Tape Recordings

■ Lance contends that the trial judge erred by admitting into evidence tape recordings made by a co-conspirator acting as the government's informant, George Pettitt ("Pettitt"). At trial, Lance challenged the authenticity of the tapes, and he now maintains, relying on a test enunciated by the Eighth Circuit in *United States v. McMillan*, 508 F.2d 101 (8th Cir.1975), that the government did not adequately authenticate the tapes by satisfying the necessary preconditions to admissibility. Our response to Lance's argument, however, may be briefly stated. First, Lance overlooks that we have expressly rejected *McMillan*'s rigid test. *See United States v. Floyd*, 681 F.2d 265, 266 (5th Cir.1982); *United States v. Anderton*, 679 F.2d 1199, 1202 (5th Cir.1982). Second, we do not require conclusive proof of authenticity before allowing the admission of disputed evidence, and we perceive no abuse of the trial judge's discretion in this case. *See United States v. Palella*, 846 F.2d 977, 981 (5th Cir. 1988); *United States v. Jardina*, 747 F.2d 945, 950–51 (5th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985).

■ The Federal Rules of Evidence provide that the requirement of authentication or identification "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). To illustrate acceptable means of authenticating evidence, Rule 901(b) lists testimony of a witness with knowledge and, for identifying a voice, an "opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *See id.* at 901(b)(1), (5). Under these liberal rules, the government's tapes were adequately authenticated to be admissible. Pettitt and the law enforcement agents who participated in the taped conversations testified that, according to their memories, the audio and video tapes contained accurate recordings of the conversations that occurred. Pettitt identified the Lances' voices, testifying that he knew them well. Counsel for all three defendants conducted voir dire examination of Pettitt concerning his method for tape recording and identifying the conversations, and counsel thoroughly cross-examined the witnesses who testified concerning the authenticity of the

tapes. We have held in similar cases that tape recordings were sufficiently authenticated to be admissible and that the defendants' arguments concerned the weight, not the admissibility, of the tapes. *See, e.g., United States v. Albert,* 595 F.2d 283, 289–90 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). Accordingly, we reach the same conclusion here.

## C. The Trial Judge's Remark

■ The Lances raise the most troublesome issue: whether they were denied a fair trial because the jurors heard the trial judge say, "this Court has found that there is independent evidence of any statements made by the defendants herein, that a conspiracy existed, that the defendants did and, in this case, the coconspirator, Mr. Alan Henderson, who is charged in the Indictment, were members of the conspiracy...." The Lances contend that the judge should have granted their motion for a mistrial following the statement because it amounted to a directed verdict of guilty. Their position is that the remark incurably destroyed the judge's impartiality and undermined the jury's role. After carefully considering the problem, however, we cannot say that the judge's statement created an unfair trial.

■ We begin by acknowledging the prejudicial nature of the judge's statement. It may have conveyed to jurors the message that the Lances urge: the judge had found that a conspiracy existed and that the defendants were members. If a juror heard that message and concluded from it that, in the judge's opinion, the defendants were guilty of the crime of conspiracy, the detrimental effect of the statement might be inescapable. As an appellate court, however, we cannot evaluate a claim of judicial misconduct during a trial by viewing a single statement in isolation. We have consistently held that in determining whether a trial judge overstepped the bounds of acceptable conduct—that is, violated his duty to conduct the trial impartially—we must "view the proceedings as a whole." *See United States v. Williams,* 809 F.2d 1072, 1088–89 (5th Cir.1987);

*United States v. Carpenter,* 776 F.2d 1291, 1294 (5th Cir.1985). Moreover, we have previously stated that even a comment arguably suggesting a judge's opinion concerning guilt is not necessarily reversible error but must be reviewed under the totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions. *See, e.g., United States v. Onori,* 535 F.2d 938, 943–44 (5th Cir.1976). As a general rule, a defendant complaining of judicial bias must demonstrate that "the error was substantial and that it prejudiced his case" to obtain a reversal of his conviction. *See Carpenter,* 776 F.2d at 1294; *United States v. Adkins,* 741 F.2d 744, 748 (5th Cir.1984).

In this case, we begin our analysis by placing the trial judge's remark in the proper perspective. The judge clearly made the objectionable statement in the course of an evidentiary ruling. The context of his remark communicated that he was making a technical statement with a particular legal significance; the beginning of his statement referred to his earlier *"James* ruling" and, after the bench conference in which defense counsel moved for a mistrial, he reiterated that his decision was "pursuant to the *James* decision of the Fifth Circuit." Throughout the course of the trial—beginning before the opening arguments of counsel, continuing through five full days of trial, and again during the jury instructions—the judge repeatedly cautioned the jurors that he was making rulings of law during the trial and that his rulings should not lead them to conclude that he had any opinion on the merits of the case or that he favored either side. In fact, following the testimony of the witness whose questioning occasioned the unfortunate ruling, the judge restated his cautionary instruction, including his advice to "disregard anything that I may have said during the trial in arriving at your finding as to the facts in this case." He also added the following statements to the pattern jury instruction concerning conspiracy:

> As the Judge, I can only decide whether evidence as to a conspiracy is admissible for you to consider, and not whether

you should accept it as credible. The decision is entirely up to you and you should not misinterpret any statements I have made in ruling on the admissibility of evidence or questions of law as to be anything more than that, that is, rulings on the admissibility and not the weight of evidence.

In this way, the judge sought to remedy his inadvertent remark, and only by specifically alerting the jurors to the particular statement at issue and then instructing them to disregard it could he have given a stronger curative charge.

We have carefully reviewed the full transcript of the trial, and we are convinced that the judge did not forfeit his impartiality. Even from our restricted point of view, it is readily apparent that the judge conducted this trial with close attention to proper procedure, considerable patience with zealous attorneys, and the utmost respect for the defendants' rights. We do not encourage a trial judge to make his preliminary findings concerning the admissibility of a co-conspirator's declaration in the presence of the jury; everyone here agrees that it would be preferable for the judge to avoid similar trial rulings. We are not concerned, however, with recommending future practice. Rather, we must decide whether the trial judge's mistake deprived the Lances of a fair trial. On the facts of this case, we are unable to say that the judge's one short statement shows prejudice that warrants reversal of the Lances' convictions.

The Lances suggest, however, that the judicial remark challenged here is unique and merits a different rule; they argue that the statement amounted to a directed verdict—an error that was presumptively prejudicial, practically incurable, and thus automatically reversible. We agree with the Lances that a judge may not direct a

verdict of guilty and that the judge's statement in this case was not merely a permissible comment on the evidence. *See United States v. Saenz*, 747 F.2d 930, 944–45 (5th Cir.1984). To support their argument that the judge's remark warrants reversal because it directed a verdict, however, the Lances rely on cases where the trial judge made a statement during his jury instructions that effectively prohibited the jury from deciding a particular factual issue, considering a theory of defense, or reaching a decision uninfluenced by the judge's view. *See United States v. Dillon*, 446 F.2d 598 (5th Cir.1971); *United States v. Skinner*, 437 F.2d 164 (5th Cir.1971); *United States v. Dopf*, 434 F.2d 205 (5th Cir. 1970); *see also United States v. Pronger*, 287 F.2d 498 (7th Cir.1961). A remark that occurs while the judge is instructing the jury on how to decide the case seems fundamentally different than one that occurs during another stage of the proceedings and that is not directed to the jurors. Moreover, the distinction is a matter of both timing and purpose; jury instructions must correctly and adequately state the law, and a defective jury charge cannot be cured by statements made earlier in the trial.

In one recent case, the Seventh Circuit considered the contention that a trial judge usurped the jury's function by commenting on the admissibility of a co-conspirator's out-of-court statements. *See United States v. Peters*, 791 F.2d 1270, 1284–86 (7th Cir.), *cert. denied sub nom., Odoner v. United States*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). The court acknowledged that a judge should not explain his hearsay rulings to the jury during a conspiracy trial, and the court found that the judge's remarks constituted such an explanation.[3] The court then noted: "The de-

---

**3.** The trial judge made the following statements:

Ladies and gentleman of the jury, you will be told, I guess I am telling you now, that many places during this trial there will be a contention, I suspect, about declarations by various people, declarations that are made out of court by people who are established by independent evidence to be members of a

conspiracy, is admissible against all members of the conspiracy.

Once their membership in the conspiracy is established, on the other hand, and so the way the Court has handled that is customarily to receive that, what otherwise would be hearsay, evidence subject to a motion for mistrial.

If the conspiracy is never effectively established, and there will be a number of instanc-

fendant does not cite, however, nor has this court's research uncovered, any case holding that an instruction of this type is reversible error." *Id.* at 1286. The court proceeded to decide that the judge's comments did not deprive the defendant of a fair trial because they did not actually prejudice him. In reaching that conclusion, the court observed that the comments were not "a forceful *de facto* pronouncement to the jury that the government had convinced the judge that a conspiracy existed" but were "vague, unclear, and possibly confusing for the jury." *Id.* The court also considered that the trial judge later withdrew his comments by instructing the jury to disregard them, that there was "abundant" proof of the conspiracy, and that the judge cured any prejudice by his final instructions to the jury about its role and the law of conspiracy. *Id.*

▮ Although the strength of the judge's remark here clearly distinguishes this case from *Peters,* the court's analysis in *Peters* confirms our view that a conspiracy conviction need not be reversed merely because a jury heard a trial judge's preliminary findings concerning the admissibility of hearsay. Rather, like other judicial comments during a trial, an appellate court must determine whether the remarks were prejudicial by examining them in the context of the whole trial and considering other factors such as the impact of the remark and curative instructions. Having previously conducted the appropriate inquiry,

we find no basis in the Lances' argument for disturbing the jury's verdict.

### D. The Defendant's Jury Instruction

▮ Lance argues that the trial judge committed reversible error by refusing to give his "theory of defense" jury instruction, which stated "the view of the evidence taken in this case by the defendant Gary Lance." [4] Initially, he relied on *United States v. Washington,* 688 F.2d 953 (5th Cir.1982), for the proposition that a criminal defendant is entitled to an instruction charging the jury on a theory of defense with legal and evidentiary foundation. During oral argument, however, he conceded that *United States v. Fooladi,* 746 F.2d 1027, 1030–31 (5th Cir.1984), states the law of this circuit. *See United States v. Gray,* 751 F.2d 733, 735–36 (5th Cir. 1985); *see also United States v. Duvall,* 846 F.2d 966, 970–72 (5th Cir. 1988). Accordingly, Lance maintains that the jury instructions viewed as a whole did not adequately express the theory of his defense. We disagree.

Lance's proposed instruction is strikingly similar to one that we concluded was properly refused in *United States v. Barham,* 595 F.2d 231 (5th Cir.1979). In that case, we stated that a defendant is not entitled to a "judicial narrative of his version of the facts," and we agreed with the trial judge that "the requested instruction was more in the nature of a jury argument than a charge." *Id.* at 244–45. Moreover, we observed that "[t]he only legally cognizable

---

es of that kind of ruling, having to be made here. The question is what did this witness believe was in that bag.

I am going to overrule the objection based upon the same line of thought; in other words, you may be told this is going to have to be disregarded later.

*Peters,* 791 F.2d at 1286 n. 16.

4. Lance's proposed jury instruction stated in pertinent part:

Gary Lance contends that he met with and associated with people he suspected to be dealing in illegal narcotics trafficking so that he could learn the facts involved in the deaths of his two brothers in an airplane crash in Jamaica in 1980. Mr. Lance believed that foul play was involved in those deaths but no investigation was conducted. Mr. Lance felt

that he needed to learn enough about the deaths in order to initiate an investigation. He felt that the only way he could learn such facts was to make connections in the marijuana trafficking commerce in Florida. Mr. Lance's assertions to various drug traffickers that he was in the same illegal commerce was motivated solely by his desire to gain the confidence of the people who could possibly yield information concerning the deaths of his two brothers.

The trial judge refused to give the instruction, stating "[i]t's a recitation of the facts and is defendant Gary Lance's theory of the case, and there is a good jury argument, and it is not, in the Court's opinion, an instruction on the law. . . ."

defense referred to in the proposed instruction was lack of the requisite criminal intent." *Id.* at 245. There, as here, the instruction essentially stated that the defendant associated with persons that were engaged in criminal activity without intending to violate the law or to join in any illegality. Thus here, as there, we find that "the instructions actually given by the Trial Judge adequately and fairly presented this 'theory of the defense.' Nothing more was required." *Id.* (footnote omitted).

### E. The Evidence Against Defendant Love

■ In evaluating the sufficiency of the evidence to sustain a conviction, we must determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Hernandez–Palacios,* 838 F.2d 1346, 1348 (5th Cir.1988) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). We view the evidence "in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." *Id.* (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Nixon,* 816 F.2d 1022, 1029 (5th Cir.1987)). Love claims that the government failed to prove his convictions for the substantive offenses alleged in the indictment: two counts of marijuana possession in violation of 21 U.S.C. § 841(a)(1) and two counts of unlawful interstate travel in violation of 18 U.S.C. § 1952. We have recently summarized the elements of these offenses. *See Hernandez–Palacios,* 838 F.2d at 1349 (marijuana possession), 1350 (unlawful interstate travel).

Love does not argue, however, that proof of a particular element is missing. Instead, his argument is this: Two counts of the indictment charged that he, aided by Lance, possessed eighteen- and twenty-pound quantities of marijuana "[o]n or about October, 1985," and two counts charged that they traveled between Florida and Mississippi to carry on a drug business "[o]n or about October, 1985," because Love allegedly transported Lance's marijuana purchases following two of Lance's trips to Miami during the fall of 1985. By comparing the testimony of a co-conspirator who accompanied Lance on his buying trips and Lance's drug supplier in Miami, and by fixing the dates of trips through cross-references to phone bills and motel records, Love maintains that he could not possibly have made the two trips. First, Love argues, the evidence established that he made a trip to Miami in September, but the witnesses agreed that Lance purchased no marijuana on that trip and Love returned to Mississippi empty-handed. Second, Love deduces that he was definitely connected to only one October trip and that it occurred during the time that he was jailed in Mississippi. During oral argument, he pointed out that one of the government's references to supporting evidence in the record was another co-conspirator's testimony concerning a trip in early 1985, probably March.

We are not persuaded. Love's deductive reasoning, although purportedly resting on "undisputed testimony," contains several assumptions that actually involve credibility determinations. We recognize that David Lassett, who admitted accompanying Lance on three trips, testified that Love transported marijuana only once, in the spring or "early part of summer" of 1985. Similarly, James Roy Collett ("Collett"), who testified that he accompanied Lance another four times, identified Love as a marijuana transporter on only one trip, and from other facts Collett associated with that trip, a juror might have concluded that it occurred near or during the time that Love was in jail. Yet Pettitt—Lance's drug supplier in Miami and the one constant observer throughout Lance's many trips with various companions—unequivocally stated during cross-examination by Love's counsel that he gave marijuana to Love twice, on an October 2–4 trip and an October 24–25 trip. These dates do not conflict with Love's proof that he was

jailed from October 11 to October 16. Although Pettitt's testimony conflicted with Collett's account because, according to Pettitt, Collett was present both times Love received marijuana, the jury might well have chosen Pettitt as the more credible witness. Pettitt refreshed his memory during his testimony with notes purportedly taken from a ledger of his drug transactions, and his answers were detailed, specific, and consistent. Collett's testimony, on the other hand, was vague, confusing, and inconsistent. Thus under the proper standard of review, we find sufficient evidence to sustain the jury's verdict.

### III.

For the above reasons, the district court's judgment is AFFIRMED.