FILED
United States Court of Appeals
Tenth Circuit

January 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ALPHONSO LOYA-MEDINA,

      Defendant - Appellant.

No. 12-1042
(D.C. No. 1:10-CR-00015-REB-7)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **PHILLIPS**, Circuit Judge.

Alphonso Loya-Medina appeals his conviction and sentence for conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

     * The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

## I

In spring 2009, while living in a community corrections facility as part of a state sentence for drug distribution, Hector Ruiz began a methamphetamine operation. Loya-Medina supplied Ruiz with drugs, and Ruiz distributed them with the assistance of Jamie Dominguez, Julio Ibarra, and Sammy Hernandez. Ruiz's girlfriend, Stephanie Perez, frequently rented hotel rooms from which Ruiz ran the drug operation.

Ruiz came to the attention of the Northern Colorado Drug Task Force during the summer of 2009. Law enforcement officers surveilled Ruiz and his associates as part of an extended investigation of their illegal drug activities. The Task Force also used a confidential informant and an undercover officer to make controlled drug buys from Ruiz's network.

The final controlled buy took place on December 2, 2009. Loya-Medina brought methamphetamine to a room Perez had rented at the Budget Host motel near the Johnson's Corner truck stop in northern Colorado. Ruiz diluted the drug in the motel room, packaged seven ounces into a raisin box, and asked Hernandez and Ibarra to deliver it to the buyer at a nearby Starbucks coffee shop. Officers arrested Hernandez and Ibarra in the Starbucks parking lot. Ruiz was arrested at the Johnson's Corner truck stop. Perez and Loya-Medina were arrested inside the motel room. After law enforcement officers obtained a warrant, they searched the motel room and seized additional methamphetamine as well as a green notebook identified at trial by Ruiz and Hernandez as a drug ledger belonging to Loya-Medina.

Ruiz, Ibarra, Dominguez, Hernandez, Perez, Loya-Medina, and another alleged supplier named Hector Melendez were included in an indictment charging conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), & 846. Loya-Medina was also charged with possession with intent to distribute fifty grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(B)(viii) and 18 U.S.C. § 2. Most of the co-defendants pled guilty, but Loya-Medina and Melendez pled not guilty and were tried jointly. Ruiz, Dominguez, Hernandez, and Perez testified for the government in exchange for the government's recommendation of reduced sentences.

Melendez was acquitted but the jury convicted Loya-Medina on both counts. The Presentence Report ("PSR") concluded that the offense involved more than fifteen kilograms of methamphetamine, determined his criminal history to be Category I, and calculated his Guidelines recommended sentencing range to be 235-293 months. The district court adopted the PSR's drug quantity calculation and Sentencing Guidelines computation but granted Loya-Medina's motion for a variance, imposing concurrent sentences of 180 months' imprisonment on each count.

## II

Loya-Medina contends that the district court committed reversible error under Fed. R. Evid. 106 and the common law rule of completeness by admitting some, but not all, of the notebook alleged to be his drug ledger. The court ordered the redaction of two

pages it deemed irrelevant because they "appear[ed] to be the work of a child practicing his penmanship, grammar and art." We review the district court's evidentiary ruling for an abuse of discretion. United States v. Batton, 602 F.3d 1191, 1196 (10th Cir. 2010). "[W]e will not disturb the district court's ruling absent a distinct showing [that] it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Id. (quotation omitted).[1]

Rule 106 partially codifies the common law rule of completeness. United States v. Lopez-Medina, 596 F.3d 716, 734 (10th Cir. 2010). It provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "In determining whether a disputed portion of a statement must be admitted . . . the trial court should consider whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence." Lopez-Medina, 596 F.3d at 735 (quotation omitted). The rule does not necessarily require admission of the entire writing or statement, only those parts that are relevant and "necessary to clarify or explain the portion already received." Id. (quotation omitted).

---

[1] The government urges us to adopt a plain error standard of review, arguing that Loya-Medina asserts for the first time on appeal that the specific basis for admitting the redacted pages was Rule 106 or the common law rule of completeness. Because Loya-Medina's claim of error fails under either standard, we do not address this argument.

Loya-Medina fails to adequately develop the argument that Rule 106 required admission of the redacted notebook pages. After citing defense counsel's vague statement at trial that "the cartoons and that sort of thing in the notebook . . . will show really where the origin of that notebook came from," Loya-Medina simply asserts that the redacted pages would have proved that the entirety of the notebook belonged to a child. To invoke the rule of completeness, it is necessary that "misunderstanding or distortion can be averted only through presentation of another portion" of the document at issue. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988). Loya-Medina has made no such showing. See United States v. Wright, 826 F.2d 938, 946 (10th Cir. 1987) (rule of completeness does not require admission of "portions of a writing which are neither explanatory of the previously introduced portions nor relevant to the introduced portions"). Loya-Medina provides no reason to believe that the unredacted majority of the notebook was something other than a drug ledger, and the evidence at trial uniformly supported the conclusion that it was. Given Loya-Medina's failure, both at trial and on appeal, to explain how the redaction caused "misunderstanding or distortion," we hold that the district court did not abuse its discretion in ordering redaction of the document.

### III

Loya-Medina also argues that the district court should have granted his motion for a mistrial after the Assistant U.S. Attorney improperly referenced, in the jury's presence, the court's finding that a conspiracy existed for purposes of Fed. R. Evid. 801(d)(2)(E). We review the denial of a motion for a mistrial for abuse of discretion. United States v.

Ivory, 532 F.3d 1095, 1099 (10th Cir. 2008). "The district court has discretion to grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired." United States v. Meridyth, 364 F.3d 1181, 1183 (10th Cir. 2004).

Early in the trial and outside the presence of the jury, the district court ruled that statements made by co-defendants would be admissible under Fed. R. Evid. 801(d)(2)(E), concluding that sufficient evidence supported the existence of a conspiracy. Later in the trial, the government attempted to introduce testimony from a law enforcement officer about the confidential informant who bought drugs from Ruiz's operation during the police investigation, and Melendez's counsel objected on relevance grounds. In response, the prosecutor stated on the record and in the presence of the jury: "Your Honor, this court has previously found a conspiracy existed and that [the confidential informant], though uncharged, was a part of the conspiracy." Both defendants immediately moved for a mistrial.

In evaluating prosecutorial misconduct, "reversal is required only if the improper conduct influenced the verdict." United States v. Maynard, 236 F.3d 601, 606 (10th Cir. 2000) (quotation omitted). We must "consider three factors within the context of the case as a whole: (1) the curative acts of the district court, (2) the extent of the misconduct, and (3) the role of the misconduct." United States v. Portillo-Quezada, 469 F.3d 1345, 1352 (10th Cir. 2006).

After briefing by all parties and a hearing outside the presence of the jury, the district court denied the motions for a mistrial. It found that the prosecutor had

-6-

misspoken unintentionally and that the statement was not part of a pattern of misconduct. "We ordinarily will not reverse if the misconduct was merely singular and isolated." United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996) (quotation omitted). The trial judge also found that the comment's impact on the jury was minimized because it was uttered without undue emotion, it was directed to the court rather than the jury, it was made in the discrete context of an evidentiary objection, and it focused on the confidential informant without referencing either defendant. Additionally, the motions for mistrial were made discreetly, without drawing further attention to the remark. Finally, the district court noted that its initial instruction to the jury included an explanation of what does and does not constitute evidence and an admonition that the jury should not be influenced by the judge's rulings on objections. All of these factors support the conclusion that the role of the government's misconduct was minor and did not merit declaration of a mistrial.

Under these circumstances, the district court determined that a curative instruction to the jury would alleviate any prejudice to either defendant. When trial resumed, the court reminded the jury that neither the attorneys' statements nor the court's evidentiary rulings are evidence, and that such rulings are based upon a lower standard of proof than that needed for criminal conviction. The court instructed the jury to disregard the government's response to Melendez's objection and admonished them not to conclude from the judge's statements or actions that he held any view on the proper verdict. "[C]onsider[ing] the trial as a whole," Maynard, 236 F.3d at 606, we conclude that the

district court judge permissibly determined that the defendants' right to a "fair and impartial trial [was not] impaired," Meridyth, 364 F.3d at 1183, by the prosecutor's remark.

Although we have not addressed this precise circumstance, a number of our sibling circuits have ruled similarly. See, e.g., United States v. Tampas, 493 F.3d 1291, 1302-03 (11th Cir. 2007) (prosecutor's remark that government had established the elements of a conspiracy was not prejudicial when addressed to court rather than jury, made in context of an evidentiary objection, and "rendered harmless by [a] curative instruction"); United States v. Birges, 723 F.2d 666, 673 (9th Cir. 1984) ("Any error which may have occurred in permitting the discussion concerning the admissibility of a co-conspirator's statement to occur in the presence of the jury was harmless in light of the court's conspiracy instruction."); United States v. Fellabaum, 408 F.2d 220, 226-27 (7th Cir. 1969) (district court did not err in denying mistrial after prosecutor argued in the jury's presence that evidence was admissible because government had shown prima facie case of conspiracy, and court admitted the evidence). Our ruling aligns with the holdings of these circuits.

Loya-Medina relies on a Fifth Circuit case in which the court recognized the prejudicial nature of a trial judge's comment affirming the existence of a conspiracy during an evidentiary ruling in the jury's presence. United States v. Lance, 853 F.2d 1177, 1182 (5th Cir. 1988). The court in Lance, however, affirmed the denial of a mistrial even though the comment was potentially more prejudicial than the one at issue

here because it came from the judge rather than the prosecutor. Id. at 1184; see also

United States v. Hester, 140 F.3d 753, 758 (8th Cir. 1998) ("The district court's sua

sponte ruling on the admissibility of coconspirator evidence before the jury, which

included a statement that the evidence was sufficient to find by a preponderance of the

evidence that Hester and Allen were members of the conspiracy . . . was not so

prejudicial as to require a mistrial or reversal."). Loya-Medina suggests that the failure to

include a specific curative statement in the final jury instructions distinguishes this case

from Lance and requires reversal. We note that Loya-Medina made no objection to the

final jury instructions, which repeated the court's frequent warning that statements made

by the court and the attorneys are not evidence. Given that Loya-Medina has not directed

us to a single case in which a court ruled that statements similar to the one at issue

required a mistrial, we hold that the district court did not abuse its discretion in denying

the motion for a mistrial.

**IV**

Finally, Loya-Medina argues that the district court erroneously computed the drug

quantity attributable to him and the applicable Sentencing Guidelines range, and thus

based his downward sentencing variance on an inaccurate base offense level. In general,

we review the district court's drug quantity calculation "under a clearly erroneous

standard, and we will not disturb it unless it has no support in the record or unless, after

reviewing all the evidence, we are firmly convinced that an error has been made." United

States v. Nieto, 60 F.3d 1464, 1469 (10th Cir. 1995). In the instant case, the district court

relied on the undisputed drug quantity calculation in the PSR.  Loya-Medina stated in his "Request for Downward Departure" that he had no objection "to the general statements in the presentence report," and concedes that he did not object to the probation officer's drug quantity calculation.  We are unconvinced that his vague arguments requesting a minimum sentence due to lack of serious involvement in the crimes of conviction constituted a proper objection to the PSR under Fed. R. Crim. P. 32(f).

This Court has "repeatedly held that if a defendant fails to object to his presentence report, he waives his right to challenge the district court's reliance on it, unless the district court's decision to do so amounts to plain error."  Ivy, 83 F.3d at 1297.  Plain error exists "when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Hinson, 585 F.3d 1328, 1333 (10th Cir. 2009) (quotation omitted).

Loya-Medina contends that the PSR's drug quantity calculation was incorrect and that the district court erred by failing to make specific factual findings regarding the applicable drug quantity.  He maintains that trial testimony and the jury verdict found him responsible for much lower quantities of drugs than the fifteen kilograms ascribed to him in the PSR.  However, a district court may enhance a defendant's sentence using facts found by the judge, as long as such findings do not mandatorily increase the sentence.  See, e.g., United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006).  Additionally, the sentencing judge "may accept any undisputed portion of the presentence

report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). The jury found Loya-Medina guilty of conspiring to distribute 500 grams or more of methamphetamine and possession with intent to distribute 50 grams or more of methamphetamine, indicating only the minimum quantity of drugs attributable to him for each count. See United States v. Lawrence, 405 F.3d 888, 907 (10th Cir. 2005) ("[T]he Supreme Court's holding in Booker would not have prohibited the district court from making the same factual findings and applying the same enhancements and adjustments to [the defendant's] sentence as long as it did not apply the Guidelines in a mandatory fashion."). The district court was therefore free to find that Loya-Medina was responsible for a specific drug quantity above those amounts or, as it did in this case, to adopt the PSR's findings.

Loya-Medina also contends that although he may be held responsible for the "reasonably foreseeable acts and omissions of others in furtherance" of the conspiracy, U.S.S.G. § 1B1.3(a)(1)(B), the district court was required to make specific findings that the total drug quantities involved were foreseeable to him. The government responds that the district court did not attribute all of the conspiracy-related methamphetamine to Loya-Medina, and thus no foreseeability finding is necessary. We agree that in selecting his base offense level, the district court attributed to Loya-Medina only the "quantities of contraband with which he was directly involved." § 1B1.3 cmt. n.2.

"When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the

-11-

particular case and bears sufficient indicia of reliability." <u>United States v. Dalton</u>, 409

F.3d 1247, 1251 (10th Cir. 2005) (quotation omitted); <u>see also</u> U.S.S.G. § 2D1.1 cmt. n.5

("Where there is no drug seizure or the amount seized does not affect the scale of the

offense, the court shall approximate the quantity of the controlled substance."). Police

seized the methamphetamine that Loya-Medina distributed the day of his arrest.

Additionally, Ruiz testified that Melendez sold him two to six ounces daily or every two

days, with Loya-Medina supplying "about the same amount," and the jury found Loya-

Medina guilty of the conspiracy charged in the first count of his indictment, which

spanned approximately six months (June 2009 through December 3, 2009). We conclude

that the drug quantity calculation has sufficient support in the record. Therefore, any

error by the district court in failing to make more specific findings about drug quantity

did not negatively affect Loya-Medina's substantial rights or seriously undermine the

fairness, integrity, or public reputation of the judicial proceedings.

**V**

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-12-