# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30950

United States Court of Appeals
Fifth Circuit

**FILED**
April 17, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

PAUL JOSEPH VIOLA,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:15-CR-253-1

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

PER CURIAM:*

      Paul Joseph Viola appeals his conviction for being a felon in possession of firearms and ammunition.  He contends that the district court erred by excluding evidence of, and jury instructions for, Viola's defense that he possessed the firearms and ammunition in reliance on a state pardon.  Because his asserted defense is foreclosed by our precedent, we affirm.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30950

In the district court, Viola was tried and convicted for unlawful possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). Viola previously pleaded guilty to a Louisiana felony, for which he received an automatic first-offender pardon after he completed his sentence. The district court concluded that—notwithstanding the pardon—Viola's offense qualified as a § 922(g)(1) predicate crime under 18 U.S.C § 921(a)(20) and *Caron v. United States*, 524 U.S. 308 (1998).

Before trial, Viola moved to include non-pattern jury instructions, the pardon, and testimony from state officials. The district court denied Viola's motion, concluding that Viola's asserted defense was foreclosed by our decision in *United States v. Spires*, 79 F.3d 464 (5th Cir. 1996).

On appeal, Viola contends that he had the right to present a "mistake of fact" defense to the jury.[1] Specifically, Viola challenges the district court's (1) refusal to submit Viola's jury instructions and (2) evidentiary exclusions. We review evidentiary rulings for abuse of discretion, though our review is "heightened" in criminal cases. *United States v. Anderson*, 933 F.2d 1261, 1267–68 (5th Cir. 1991). And "[a] conviction can not be overturned for failure to instruct the jury on a defense unless the requested but omitted instruction has an evidentiary basis in the record which would lead to acquittal." *Spires*,

---

[1] "To establish a violation of § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010) (quoting *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005)). Here, despite Viola's assertion to the contrary, he did not preserve or present any argument contesting elements (1) or (3). *Compare* Oral Argument at 4:55–6:05 *with* 35:00–37:25, *United States v. Viola* (No. 17-30950), http://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings. So the only question properly before us is whether he has a defense to (2).

2

No. 17-30950

79 F.3d at 466 (citing *United States v. Duvall*, 846 F.2d 966, 971 (5th Cir. 1988) (per curiam)).

Although Viola characterizes his defense as a "mistake of fact," we agree with the district court that Viola's core defense is entrapment by estoppel: "The defense of entrapment by estoppel is applicable when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct." *Id.* (collecting cases). Here, Viola wanted to present evidence that he relied on the pardon letter and assurances from state officials that he was allowed to possess firearms.

Viola cannot avail himself of the entrapment-by-estoppel defense. "The defense is a narrow exception to the general rule that ignorance of the law is no excuse[.]" *Id.* And so it applies in narrow circumstances:

> To satisfy the requirements of the defense *when charged with a federal crime*, a defendant is required to show reliance either [1] on a *federal government official* empowered to render the claimed erroneous advice, or [2] on an authorized *agent of the federal government* who has been granted the authority from the federal government to render such advice.

*Id.* at 466–67 (emphases added) (collecting cases). Thus, the defense does not apply when, as here, a defendant relies on a *state* official's assurances to his detriment under *federal* law. *See id.*; *see also United States v. Hale*, 685 F.3d 522, 542–43 (5th Cir. 2012) (per curiam) ("Neither [the Laredo Police Officer], who [defendant] claims recruited him to work with him undercover, nor [the Laredo Police Sergeant], who [defendant] claims knew of the undercover work, are authorized *federal* government officials empowered to give advice on federal drug laws.").

3

No. 17-30950

Because Viola asserted a non-cognizable defense, the district court did not err by refusing to instruct the jury on, or permit evidence of, that defense. *See Spires*, 79 F.3d at 466. Accordingly, we affirm.

No. 17-30950

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

As Viola has not contended that his state conviction was not a valid predicate offense, I concur fully in our judgment affirming his convictions. I write separately to explain the effect of the state pardon here. The issue implicit in his assertion of equitable estoppel but not raised offers a powerful argument for reversal of his convictions. I would leave this aside but for the circumstances that the government advises that Viola is being prosecuted separately in the Middle District of Louisiana based on the same state predicate conviction. While the brevity of our per curiam opinion is merited because of the unavailability of the entrapment of estoppel defense—the issue Viola chose to raise to this court—we did not consider whether Viola was effectively pardoned by the first offender pardon letter given to Viola by Louisiana in 2011.

On March 14, 2008, Viola pleaded guilty to a state felony charge of possession with intent to distribute marijuana, receiving a suspended sentence of five years and three years of supervised probation. On successfully completing his probation, Viola received a first offender pardon letter from the Louisiana Division of Probation and Parole. That letter explained that Viola met all of the requirements for an automatic first offender pardon, as outlined by La. Rev. Stat. 15:572, and provided that effective March 14, 2011, "all rights of citizenship and franchise are restored in Louisiana," and

> The right to receive, possess, or transport a firearm may not be restored unless all legal provisions are met and should be determined through the local law enforcement agency.

Following the directive given to him in that pardon letter—informing him that his local law enforcement agency should determine whether all legal provisions were met with respect to his firearm rights—Viola reached out to

his local law enforcement official to ask if he was eligible to possess firearms. During trial in the district court, outside the presence of the jury, Viola proffered the testimony of two law enforcement officials who would have explained to the jury the pardon and the steps Viola took to comply with its terms. Defense counsel offered a summary proffer of former chief of police for the Town of Krotz Springs, Norman Mouille. Mouille would have testified that he knew Viola, and Viola came to him sometime in March 2011 after receiving the pardon letter to ask if he could possess a firearm; Mouille told Viola that given the pardon, he could legally possess a firearm. Mouille would have testified that Viola's father, Charles Viola (who Mouille was also acquainted with), later approached Mouille to "double check" and "be sure" that his son could possess firearms. Mouille would have also testified that there was nothing in the letter that required him to confirm his understanding with another authority, such as ATF, and that the letter gave "total discretion to a local law enforcement officer."

Maria Pollack Toups, an officer with the Louisiana Department of Corrections, Division of Probation and Parole, testified in a live proffer outside the presence of the jury. Toups had never met Viola, and testified to the process used by the Department of Probation and Parole to determine who would receive a first offender pardon. She confirmed that the Department would not send any additional information to probationers regarding firearm possession. Toups testified that in 2016, the language in the pardon letter was changed. Instead of directing the recipient to local law enforcement for a determination, the revised letter provided that

> The right to receive, possess or transport a firearm may not be restored unless all legal provisions (refer to La. R. S. 14:95.1) are met. Any questions regarding these legal provisions should be directed to your attorney.

6

No. 17-30950

Viola moved to dismiss the indictment in district court and the court denied that motion, relying on the Supreme Court's decision in *Caron v. United States*.[1] In *Caron*, the Supreme Court interpreted the federal felon in possession statute to clarify when a state's restoration of civil rights was effective.[2] 18 U.S.C. § 922(g)(1) prohibits a person convicted of a crime punishable by more than one year in prison from possessing a firearm.[3] A previous conviction is *not* a valid predicate, however, if the offender's civil rights have been restored through a pardon, expungement, or other such restoration, "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship transport, possess, or receive firearms."[4] In *Caron*, the Supreme Court held that if a state places any limitations on an offender's right to possess a weapon, that state limitation activates the unless clause meaning a restoration of rights is ineffective under § 921(a)(20).[5] In denying Viola's motion to dismiss the indictment, the district court reasoned that because the State of Louisiana still placed restrictions on a felon's right to possess a firearm,[6] those restrictions triggered the "unless clause" of 18 U.S.C. § 922(g)(1).[7]

---

[1] 524 U.S. 308 (1998).

[2] *Id.* at 315–16.

[3] 18 U.S.C. § 922(g)(1).

[4] 18 U.S.C. § 921(a)(20).

[5] *Caron*, 524 U.S. at 316–17.

[6] The district court focused on the Louisiana statute precluding a convicted felon from obtaining a concealed carry permit. La. Rev. Stat. Ann. 40:1379.3(C)(10). As the government points out in its brief, Louisiana places an additional restriction on the ability of a convicted felon to possess a firearm—a 10-year cleansing period during which a convicted felon cannot possess any firearm. La. Rev. Stat. Ann. 14:95.1.

[7] Viola's counsel confirmed at oral argument that he did not present the issue of whether his state conviction was a valid predicate to this court on appeal.

7

No. 17-30950

My colleague suggests that it is time for the Supreme Court to reconsider *Caron*. Perhaps, but not in the case before us as resort to *Caron* was not necessary or justified in Viola's case. First-offender pardons are contemplated by the Louisiana Constitution[8] and the procedure for issuing the automatic first offender pardon is enumerated by statute.[9] As authorized by statute, the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole sent an automatic first-offender pardon letter to Viola in 2011 informing him that "[t]he right to receive, possess, or transport a firearm may not be restored unless all legal provisions are met and should be determined through the local law enforcement agency." Viola was informed that his local law enforcement agency had the authority to determine whether all relevant legal provisions were met. Understanding that directive, Viola asked his local law enforcement officer, who confirmed that all legal provisions were met—he told Viola he could possess a firearm.[10] His father confirmed that understanding with law enforcement.

---

[8] La. Const. Art. 4, § 5 (E)(1) ("The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a non-violent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of weapons or dangerous instrumentalities never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.").

[9] La. Rev. Stat. Ann. 15:572 (B) & (D).

[10] I pause briefly to note that because Chief Mouille's testimony was introduced by a summary proffer, it is not the model of clarity. The summary proffer given by Viola's counsel focused on possession, and it is unclear whether law enforcement's assurances to Viola extended to all firearm statutes, including the concealed carry permitting restrictions placed on convicted felons. While it is of no consequence to the disposition of the prosecution before us, read in context of the assurances sought, Chief Mouille's summary proffer describes an assurance to Viola that *all* of his firearms rights were restored. So with respect to the concealed carry permitting law, his assurances removed the felony conviction disqualification from the many requirements to get a concealed carry permit. That is to say, Viola may still

8

No. 17-30950

Taking the language of the pardon letter together with the proffered testimony that Viola had received confirmation of his right to possess a gun from a local law enforcement official (as directed), Louisiana's restoration of rights was fully effective, meaning there was no longer a state limitation on his rights: the 10-year cleansing period statute did not apply and any disqualification to receiving a concealed carry permit on the basis of a felony conviction was removed. Louisiana's Constitution and statutory scheme provided for an automatic first offender pardon—the pardon that was issued pursuant to that authority explicitly informed Viola that his local law enforcement agency had the power to determine whether he could possess a firearm.[11] The premise of *Caron* was that where a state has singled out an offender as dangerous enough to place *some* limit on the offender's ability to possess a firearm, federal law then "uses this determination to impose its own

---

not be entitled to a permit for reasons separate and apart from his felony conviction, but the operation of the pardon letter and Chief Mouille's assurances removed that particular felony conviction hurdle.

[11] In a footnote in its brief, the government points to *State v. Eberhardt* in support of the proposition that the 10-year cleansing statute applies even where the defendant has received an automatic first-offender pardon. *State v. Eberhardt*, 145 So. 3d 377, 387 n.7 (La. 2014). We do not disagree as a general rule. But there, Eberhardt received the first-offender pardon letter—directing him to his local law enforcement agency to determine whether all legal provisions were met—and Eberhardt did not avail himself of that option. *Id.* As the Louisiana Supreme Court noted, under Louisiana law at that time, a convicted felon could apply to the sheriff of the parish in which he resided for a permit to possess a weapon that would give him the opportunity to possess a weapon notwithstanding the 10-year cleansing period statute. *Id.* (quoting 2010 La. Acts, No. 942, § 1, effective Aug. 1, 2010) (the permitting statute was repealed before Viola received his pardon). Eberhardt did not apply for a permit and there is also no indication that he reached out to local law enforcement to determine whether any legal provisions barred him from possessing a firearm. *Id.* So the Louisiana Supreme Court conclusion that Eberhardt's pardon letter did not exempt him from the state's 10-year cleansing period statute is not inconsistent with my reading of the pardon here. Eberhardt did not seek confirmation of his rights from local law enforcement (who were authorized to determine whether all legal provisions were met); Viola did. Because Viola was told by a local law enforcement agent that all legal provisions were met, Viola availed himself of the fully effective pardon contemplated by the letter.

9

broader stricture"—prohibiting the offender from possessing *any* firearm.[12] Here, we have the inverse. Through the operation of the language in the pardon letter, Louisiana has fully restored Viola's rights to receive, possess, and transport a firearm. In the face of *no* state limitation, *Caron* is inapplicable—there can be no argument that the unless clause was triggered or that the broader federal restriction applied. *Caron* is premised on the idea that any state limitation conveys a determination of dangerousness, triggering the broader restrictions under federal law. Here however, by the terms of the pardon letter, Viola could not have been prosecuted under state law. Given that there was no limitation under state law, the pardon was fully effective, the unless clause was not triggered, and the federal ban did not apply.

To be sure, this conclusion is limited and is a creature of the odd and imprecise language chosen by Louisiana in its pardon letter, language that is no longer operable after the first offender pardon letter was amended in 2016 in response to the confusion it engendered. Because Viola could not have been prosecuted by the state—given the language of the pardon letter and the statements of local law enforcement—his pardon was fully effective to restore his firearm rights under state law. That the language of the pardon letter would prevent Louisiana from prosecuting Viola is reinforced by the broader principles of the Due Process Clause. It is a long-standing principle (though sensibly limited) that due process prevents a state from prosecuting a defendant who relied upon a state official's assurance that the defendant was acting within the law of the state[13]—it is a basic fairness that an individual

---

[12] *Caron*, 524 U.S. at 315.

[13] *See Raley v. Ohio*, 360 U.S. 423, 425–26 (1959) ("We hold that in the circumstances of these cases, the judgments of the Ohio Supreme Court affirming the convictions violated the Due Process Clause of the Fourteenth Amendment and must be reversed . . . . After the Commission, speaking for the State, acted as it did, to sustain the Ohio Supreme Court's

No. 17-30950

has fair warning of what a state intends to punish. It is worth reiterating my agreement with our opinion today that Viola was not entitled to the estoppel defense he seeks because he relied on a local official's assurances to his detriment under federal law. I refer to the teachings of *Cox* and *Raley* to emphasize that *Louisiana* would not have been able to prosecute Viola under *state* law—by operation of the pardon letter—meaning there was no state limitation triggering the unless clause of 18 U.S.C. § 921(a)(20). Without such a limitation, the indictment should have been dismissed after proper motion to the district court. Because no such argument has been raised, I concur fully in the court's opinion today.

---

judgment would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him."); *Cox v. Louisiana*, 379 U.S. 559 (1965) ("As in *Raley*, under all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.' The Due Process Clause does not permit convictions to be obtained under such circumstances." (internal citation omitted)).

No. 17-30950

JENNIFER WALKER ELROD, Circuit Judge, concurring:

Paul Viola is now serving more than three years in prison for committing a federal crime that is predicated on a state possession-of-marijuana offense for which he was pardoned. His crime: exercising the right to self-defense by possessing a firearm that the Chief of Police expressly told him he could lawfully possess because of that pardon. I concur with the reasons provided in the panel opinion for why that conviction must be affirmed by this court, but I write separately to express my concerns with one of the precedential cases that got us here.

The Supreme Court's decision in *Caron v. United States*[1] provided the basis for the district court's determination that the predicate offense for the federal crime existed, notwithstanding the fact that the predicate offense was a state offense for which Mr. Viola had been pardoned. Perhaps it is time for the Supreme Court to revisit its decision in *Caron,* both as a matter of statutory interpretation and in light of the right recognized in *Heller*[2] and *McDonald.*[3]

I.

In March 2008, Mr. Viola pleaded guilty to possession of marijuana with intent to distribute. It was a non-violent crime for which he received a suspended five-year sentence and three years of probation. Mr. Viola completed his probation, and, pursuant to Louisiana's Constitution, he received a first offender pardon.[4] That pardon was supposed to restore his full

---

[1] 524 U.S. 308 (1998).

[2] 554 U.S. 570 (2008).

[3] 561 U.S. 742 (2010).

[4] *See* La. Const. Art. IV § 5(E)(1) ("[A] first offender convicted of a non-violent crime . . . shall be pardoned automatically upon completion of his sentence[.]").

No. 17-30950

rights of citizenship.[5] The pardon letter that Mr. Viola received directed him to contact local law enforcement to verify that his right to possess a firearm had been restored. In relevant part, the letter Mr. Viola received from Louisiana's Department of Public Safety and Corrections said:

> The right to receive, possess, or transport a firearm may not be restored unless all legal provisions are met and should be determined through the local law enforcement agency.

Mr. Viola did exactly that. In testimony that was not permitted to go before the jury, the local Chief of Police stated that Mr. Viola sought him out to inquire whether he was permitted to possess firearms, and the Chief of Police told him that his right to possess firearms had been restored by the pardon. The Chief of Police also stated that he gave the same answer to Mr. Viola's father, who wanted to confirm that his son would be complying with the law.

Nonetheless, despite Mr. Viola's efforts to comply with the law, the federal government stepped in to prosecute him for violating a federal felon-in-possession-of-a-firearm law that was predicated on the very same state conviction for which he had been pardoned. Moreover, the federal government did so notwithstanding the text of 18 U.S.C. § 921(a)(20), which states:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction . . . for which a person has been pardoned* or has had civil rights restored *shall not be considered a conviction for purposes of this chapter, unless such pardon*, expungement, or restoration of civil rights *expressly*

---

[5] La. Const. Art. I § 20 ("Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."); *see also* La. Rev. Stat. Ann. 15:572(D) ("On the day that an individual completes his sentence the Division of Probation and Parole of the Department of Corrections . . . shall issue a certificate recognizing and proclaiming that the petitioner is fully pardoned for the offense, and that he has all rights of citizenship and franchise[.]").

No. 17-30950

*provides that the person may not ship, transport, possess, or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added).

II.

The district court denied Mr. Viola's motion to dismiss the indictment for lack of a predicate offense based on the Supreme Court's precedent in *Caron*, coupled with the fact that Louisiana does not permit pardoned ex-felons to receive concealed carry permits.[6]

In *Caron*, a citizen of Massachusetts who had previously committed felonies had his right to possess rifles—but not handguns (or, more specifically, not handguns outside of the home)—restored by the state. Mr. Caron was nonetheless prosecuted by the federal government for the possession of rifles in his home, notwithstanding Massachusetts's restoration of his legal right to possess them. A divided Supreme Court upheld the conviction. According to the majority opinion in *Caron*, federal law—not state law—determines when an offender's right to possess firearms is restored, and if state law places *any* residual restriction on the right to possess *any* firearms in *any* manner

---

[6] In a separate concurrence, my colleague very thoughtfully explains why, given the facts of this case, Mr. Viola likely cannot be prosecuted by Louisiana for violating the state's 10-year "cleansing period" statute, and why the "cleansing period," therefore, likely could not be a basis for triggering Section 921(a)(20)'s "unless clause." While I agree with my colleague's analysis as it pertains to the "cleansing period" statute, I respectfully disagree with the conclusion that resort to *Caron* by the district court was improper in this case because the district court should have dismissed for lack of a predicate offense.

Louisiana law explicitly provides that recipients of the first offender pardon are not eligible to receive a concealed carry permit. *See* La. Rev. Stat. Ann. 40:1379.3(C)(10). Nothing from the record supports the conclusion that the pardon Mr. Viola received, nor the advice he received from the Chief of Police, would have restored his ability to receive a concealed carry permit from the state if he had applied for one. As explained below, under *Caron*'s interpretation of Section 921(a)(20), that limitation triggers the "unless clause." As such, the district court could not have dismissed the indictment for lack of a predicate offense while still being faithful to the Supreme Court's precedent in *Caron*.

whatsoever, then federal law bars *all* possession of *all* firearms in *all* cases. 524 U.S. at 314–17. The majority opinion in *Caron* explicitly observed that it was treating restoration of the right to possess a firearm differently from other rights, such as the right to vote or the right be on a jury, where state law governs the restoration of the right. *Id.* at 316.

Since *Caron*, at least two federal courts of appeals—in addition to the district court in the instant case—have held that an ex-felon permitted by the state to possess a firearm nonetheless violates federal law when he possesses that firearm, in full compliance with state law, but the state declines to grant him a concealed carry permit for transporting it. *See Van Der Hule v. Holder*, 759 F.3d 1043, 1049 (9th Cir. 2014); *United States v. Sanford*, 707 F.3d 594, 598 (6th Cir. 2012). Thus, despite a federal statute saying the federal felon-in-possession-of-firearm laws do not apply to ex-felons after they have been pardoned *unless* the pardon *expressly* provides they *may not* possess or transport firearms, those laws are being enforced against ex-felons *even when* the pardon *expressly* provides they *may* possess and transport firearms—based on the reasoning that the state still limits, in some manner, the methods by which those firearms may be transported.

Dissenting in *Caron*, Justice Thomas, joined by Justices Scalia and Souter, carefully pointed out that as a matter of statutory interpretation, Section 921(a)(20)'s plain language should have been interpreted to mean that a pardoned state offense can be a predicate offense for federal felon-in-possession-of-firearm laws "only when the State additionally prohibits those ex-felons from possessing firearms altogether." 524 U.S. at 318 (Thomas, J., dissenting). Moreover, the dissenting opinion noted that "[g]iven the primacy of state law in the statutory scheme, it is bizarre to hold that the *legal* possession of firearms under state law subjects a person to a sentence

enhancement under federal law. . . . Ex-felons cannot be expected to realize that a federal statute that explicitly relies on state law prohibits behavior that state law allows." *Id.* at 318–19 (Thomas, J., dissenting).

*Caron* was decided in an era wherein some courts rejected the fact that the right to keep and bear arms for self-defense is an individual right entitled to constitutional protection. Indeed, the district court in *Caron* was one such court. *See United States v. Caron*, 941 F. Supp. 238, 241 n.7 (D. Mass. 1996) ("This Court notes at the outset that there is no individual right to possess firearms, nor is possession of a firearm a civil right."). *Heller* and *McDonald* changed that—or at least they should have. As such, *Caron*'s different treatment of the restoration of the right to possess firearms from the restoration of other fundamental rights raises questions as to its continued validity.

Therefore, in an appropriate case, I would respectfully suggest that the Supreme Court revisit *Caron*'s interpretation of 18 U.S.C. § 921(a)(20)'s "unless clause," both as a matter of statutory interpretation and in light of the fact that possessing a firearm for self-defense should not be treated "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees[.]" *McDonald*, 561 U.S. at 780 (plurality op.).